NICK ANGEL, INDIVIDUALLY AND AS TREASURER OF LAKE COUNTY, INDIANA *v.* MARTIN BEHNKE, INDIVIDUALLY AND AS MEMBER OF BOARD OF COMMISSIONERS OF LAKE COUNTY, INDIANA ET AL.

[No. 3-1173A160. Filed November 19, 1975.]

*Jerry L. Colglazier, Phillip E. Bainbridge,* of Highland, *William M. Evans,* of Indianapolis, for appellant.

*William J. Muha,* of Highland, *Martin H. Kinney,* of Gary, for appellees.

STATON, P.J.—Angel brings this interlocutory appeal from the denial of his application for a preliminary injunction pursuant to Indiana Rules of Procedure, Appellate Rule 4(B). Angel, individually, as a taxpayer, and as Treasurer of Lake County, filed this action in the trial court to enjoin the members of the Lake County Board of Commissioners and the Lake County Data Processing Board from carrying out a lease for data processing equipment with National Cash Register, Inc. Angel raises the following issues on appeal:

Issue One: Did the trial court err in determining that the Lake County Board of Commissioners had established a data processing system prior to the effective date of IC 1971, 17-3-88-1, *et seq.* (Burns Code Ed.)?

Issue Two: Did the trial court err in determining that the Lake County Board of Commissioners is not required to comply with competitive bidding statutes in awarding a lease of data processing equipment.[1]

We conclude that the trial court correctly determined the above questions of law and find no abuse of discretion in the trial court's denial of Angel's application for a preliminary injunction.

Initially, we must clear up some confusion regarding this Court's function in reviewing the grant or denial of preliminary injunctions. Behnke is correct in his assertion that basically this Court reviews the trial court's grant or denial of a preliminary injunction for abuse

---

1. Although Angel raises the contention of error that the proposal accepted by the Lake County Board of Commissioners was not the lowest and best bid in his motion to correct errors, this issue is waived on appeal for failure to submit any argument thereon in Angel's brief. Indiana Rules of Procedure, Appellate Rule 8.3(A) (7); *Sekerez* v. *Bd. of Sanitary Commissioners* (1974), 160 Ind. App. 13, 309 N.E.2d 460.

of discretion. Clearly, under IC 1971, 34-1-10-2 (Burns Code Ed.)[2] and Indiana case law, the grant or denial of a preliminary injunction rests in the sound discretion of the trial court. *Gariup* v. *Stern* (1970), 254 Ind. 563, 261 N.E.2d 578; *Rosenberg* v. *Village Shopping Center, Inc.* (1968), 251 Ind. 1, 238 N.E.2d 642; *Elder* v. *City of Jeffersonville* (1975), 164 Ind. App. 422, 329 N.E.2d 654. However, Angel is also correct in his contention that this Court must review the trial court's findings of fact to determine if they are clearly erroneous pursuant to Indiana Rules of Procedure, Trial Rule 52. Pursuant to TR. 52(A) and TR. 65(D), the trial court in granting or refusing to grant preliminary injunctions is required to make special findings of fact and state its conclusions thereon.[3] Under TR. 52(A), this Court ". . . shall not set aside the findings or judgment unless clearly erroneous. . . ." Therefore, in every appeal from the grant or denial of a preliminary injunction, we are necessarily involved with a review of the findings of fact and the conclusions made from those findings of fact. If the findings of fact or conclusions are clearly erroneous, this Court may conclude that the trial court abused its discretion. The decision of the trial court to grant or deny a preliminary injunction rests on many factors. *See Elder* v. *City of Jeffersonville, supra.* When a trial court has made one or more erroneous findings of fact or has come to an

---

2. IC 1971, 34-1-10-2 (Burns Code Ed.) provides:

"When it appears by the complaint that the plaintiff is entitled to the relief demanded, and the relief, or any part thereof, consists in restraining the commission or continuance of some act, the commission or continuance of which, during the litigation, would produce great injury to the plaintiff; or, when, during the litigation, it appears that the defendant is doing, or threatens, or is about to do, or is procuring or suffering some act to be done, in violation of the plaintiff's rights, respecting the subject of the action, and tending to render the judgment ineffectual, or when such relief, or any part thereof, consists in restraining proceedings upon any final order or judgment, an injunction may be granted to restrain such act or proceedings, until the further order of the court, which may, afterwards, be modified upon motion. . . ."

3. TR. 52(A) does not require the trial court to make formal conclusions of law. *Town of Newburgh* v. *Stephenson* (1974), 161 Ind. App. 597, 316 N.E.2d 855.

erroneous conclusion, an abuse of discretion does not always follow. When viewing the totality of the circumstances, the preliminary injunction may have been correctly denied or granted on other grounds.

In the instant case, the essential facts underlying the trial court's denial of the preliminary injunction are not in dispute. The sole contention of error on appeal is that the trial court erroneously denied Angel's application for a preliminary injunction because of its allegedly incorrect determination of the two questions of law discussed below.

## I.

### Data Processing System

In 1967, the Legislature passed IC 1971, 17-2-74-1—17-2-74-10 (Burns Code Ed.) enabling boards of county commissioners in counties with one or more second-class cities to establish data processing agencies. Pursuant to the 1967 Act, the Lake County Board of Commissioners passed a resolution establishing a study committee to determine if a data processing agency and board should be created for Lake County. See IC 1971, 17-2-74-2 (Burns Code Ed.). Upon the study committee's recommendation, the Lake County Board of Commissioners passed a resolution on February 8, 1971 establishing a data processing agency and a data processing board. Pursuant to IC 1971, 17-2-74-7 (Burns Code Ed.), the board was to consist of:

" (a) the county auditor
 (b) the county treasurer
 (c) the county assessor
 (d) a member of the board of county commissioners, and
 (e) a representative appointed by each governmental unit which shall contract with the county for the use of the county's data processing equipment. . . ."

The new data processing board held its first meeting in June, 1971 and submitted its first proposed budget prior to Septem-

ber, 1971. The budget for the new data processing agency was approved by the Lake County Council in September, 1972 and an agency director was appointed in March, 1973.

In 1971, the Legislature passed IC 1971, 17-3-88-1—17-3-88-23 (Burns Code Ed.) allowing the boards of county commissioners of any county to establish a county automatic data processing board. Explicitly exempted from the 1971 Act are:

"(1) Those counties having data processing systems established under and pursuant to previously enacted laws whose powers, rights and duties under said laws are hereby, in all respects approved and affirmed." IC 1971, 17-3-88-1 (Burns Code Ed.)

The effective date of the 1971 Act was September 2, 1971. It is not disputed that the Lake County Data Processing Agency had no director, budget or employees prior to the effective date of the 1971 Act. Angel would have this Court interpret "having data processing systems" in IC 1971, 17-3-88-1(1), to mean having a data processing board and agency already carrying on the business of data processing. Appellee National Cash Register, on the other hand, would have this Court interpret "having data processing systems" to mean having an existing board and agency regardless of whether the agency was in fact funded and supplying data processing services.

The 1971 Act does not define "data processing system." When a statute is unclear or ambiguous, this Court's primary function is to ascertain and give effect to the intent of the Legislature. *Economy Oil Corp.* v. *Indiana Dept. of State Revenue* (1974), 162 Ind. App. 658, 321 N.E.2d 215; *Wayne Township* v. *Lutheran Hospital* (1974), 160 Ind. App. 427, 312 N.E.2d 120. If more than one construction is possible, this Court may consider the consequences of a particular construction. *State ex rel. Bynum* v. *LaPorte Superior Court No. 1* (1973), 259 Ind. 647, 291 N.E.2d 355; *Economy Oil Corp.* v.

*Indiana Dept. of State Revenue, supra.* We note that under the 1971 Act, the county automatic data processing board is to consist of only three members whereas under the 1967 Act, the board is to consist of four or more members. IC 1971, 17-3-88-4 and IC 1971, 17-2-74-7. The 1971 Act provides that the county auditor is to serve as the board secretary and as chief administrator of the board, and shall supervise the operation of the automatic data processing center. IC 1971, 17-3-88-5; IC 1971, 17-3-88-9. However, under the 1967 Act, the board members are allowed to elect a chairman and secretary from their membership. IC 1971, 17-2-74-7. Also, under the 1967 Act, the data processing agency is to be under the control and direction of the data processing board. IC 1971, 17-2-74-7. To conclude that Lake County did not have an established data processing system within the meaning of IC 1971, 17-3-88-1(1), would be to require the Lake County Board of Commissioners to pass a new resolution establishing a new data processing board in compliance with the 1971 Act. Clearly the legislative intent in exempting certain counties from the 1971 Act was to avoid interference with existing data processing boards and agencies and to avoid delay in the availability of data processing services to those counties that had already taken the initial steps to secure such services. The trial court correctly concluded that the Lake County Board of Commissioners had an established "data processing system" prior to the effective date of the 1971 Act.

## II.

### Competitive Bidding

On May 21, 1973, five vendors had submitted sealed proposals to lease data processing equipment to the Lake County Board of Commissioners. No newspaper notification calling for proposals as required by various competitive bidding statutes was given by the Board. Using a point system, the director of the data processing board ranked the National Cash

Register proposal as the best. The data processing board members were divided in favor of the National Cash Register proposal and the UNIVAC proposal. On June 18, 1973, the Lake County Board of Commissioners accepted National Cash Register's proposal and entered into a five year lease of data processing equipment at a monthly rental of $14,600.00. On appeal, Angel contends that IC 1971, 5-16-1-1—5-16-1-3 (Burns Code Ed.) is applicable to the lease of data processing equipment and that failure of the Board to comply with the newspaper notification requirements of IC 1971, 5-16-1-3 (Burns Code Ed.) renders the rental contract with National Cash Register void.

Before reviewing the applicable competitive bidding statutes, we would again point out that our primary concern in construing a statute is to ascertain the intent of the Legislature. *Economy Oil Corp.* v. *Indiana Dept. of State Revenue; Wayne Township* v. *Lutheran Hospital, supra.* The purpose of competitive bidding statutes is "to safeguard the public against fraud, favoritism, graft, extravagance, improvidence and corruption, and to insure honest competition for the best work or supplies at the lowest reasonable cost." *School City of Gary* v. *Continental Elec. Co.* (1971), 149 Ind. App. 416, 419, 273 N.E.2d 293, 296. It seems clear to us that in the interest of safeguarding public funds, leases of equipment involving large rental fees, as in the instant case, should be covered by competitive bidding requirements. However, when the language used in a statute is unambiguous, this Court may not expand or contract the meaning of the statute by reading into it language which will in the opinion of the Court correct supposed defects. *Grody* v. *State* (1972), 257 Ind. 651, 278 N.E.2d 280; *A. B.* v. *C. D.* (1971), 150 Ind. App. 535, 277 N.E.2d 599.

The statute Angel contends is applicable to the lease at issue is IC 1971, 5-16-1-1 which provides in pertinent part as follows:

"When any public building or any other public work or improvement of any character whatsoever is to be constructed, erected, altered or repaired at the expense of the state, or at the expense of any county . . . and when the estimated costs of such work or improvement will be five thousand dollars [$5,000] or more, it shall be the duty of the board . . . to adopt plans and specifications and award a contract for such public work or improvement to the lowest and best bidder who submits a bid for the performance thereof. . . .

". . . Provided, however, That notwithstanding any other provisions of law, the board of county commissioners, acting on behalf of any county . . . may purchase materials in the manner provided by law and perform any work by means of its own workmen and owned or leased equipment in the construction, maintenance, and repair of any highway, bridge, or culvert without awarding a contract therefor, whenever the cost of such work shall be estimated to be less than thirty thousand dollars [$30,000]. The term 'cost of such work' shall include the cost of materials, labor, equipment, rental, reasonable rate for use of trucks and heavy equipment owned and all other expenses incidental to performance of the work. *When the work involves the rental of equipment with an operator furnished by the owner, . . . such work shall be deemed to be public work and subject to the provisions of this section. . . .*" (Our emphasis)

Angel would have this Court interpret the underlined portion of IC 1971, 5-16-1-1, *supra,* to apply to the rental of data processing equipment in the instant case. However, when examining a statute, this Court must look to the statute as a whole and we may not give words a special meaning by taking them out of context. *State* v. *Bigbee* (1973), 260 Ind. 90, 292 N.E.2d 609; *In re Estate of Cassner* (1975), 163 Ind. App. 588, 325 N.E.2d 487. Clearly, the work involving "the rental of equipment" referred to in the underlined portion of IC 1971, 5-16-1-1 has reference to work involving the "construction, maintenance, and repair of any highway, bridge, or culvert" and cannot be construed out of context to refer to *any* rental of equipment. We would also point out that although it is possible to construe the lease of data processing equip-

ment as an "improvement" of county record-keeping, rented data processing equipment is neither "constructed, erected, altered or repaired" within the meaning of IC 1971, 5-16-1-1. IC 1971, 5-16-1-1 can not be construed to be applicable to the lease of data processing equipment.

Another competitive bidding provision applicable to boards of county commissioners is the Public Purchases Act, IC 1971, 5-17-1-1—5-17-1-9 (Burns Code Ed.)[4] which provides in pertinent part as follows:

"Any person, officer, board, commissioner, . . . duly authorized and empowered by law or delegated and entrusted with authority, to make purchases of material or materials, equipment, books and supplies . . . payment for which is to be made from any appropriation of public funds made under the provisions of the budget law . . . shall comply with the requirements of this act [5-17-1-1—5-17-1-9] whenever the total amount of any purchase exceeds four thousand dollars [$4,000]. . . ." IC 1971, 5-17-1-1 (Burns Code Ed.).

"In all cases of advertising for the purchase of materials, equipment, goods and supplies, the purchaser shall prepare specifications describing with reasonable particularity the kind, quantity and quality of all materials, equipment, goods and supplies which may be needed for any designated period. . . . Notice of the time and place for receiving of bids for the purchase of the materials, equipment, goods. and supplies shall be given by publication by two [2] insertions in each of . . . two [2] newspapers of general circulation. . . ." IC 1971, 5-17-1-2 (Burns Code Ed.)

At first blush, we were convinced that public policy considerations required that "purchase of equipment" in the Public

---

4. IC 1971, 17-1-24-35 (Burns Code Ed.) also covers purchases of supplies and materials by county commissioners and contains competitive bidding procedures. IC 1971, 5-17-1-8 (Burns Code Ed.) provides that the Public Purchases Act is to be construed as being supplemental to all existing laws and must be construed *in pari materia,* if possible, with IC 1971, 17-1-24-35. See *Economy Oil Corp.* v. *Ind. Dept. of State Revenue* (1974), 162 Ind. App. 658, 321 N.E.2d 215. Since IC 1971, 5-17-1-1 is specifically applicable to those purchases exceeding four thousand dollars and the lease at issue involves a rental fee over four thousand dollars, we will discuss the applicability of IC 1971, 5-17-1-1 to leases in the body of our opinion.

Purchases Act should be construed to include the lease of equipment. *See Galloway* v. *Road Improvement Dist. No. 4* (1920), 143 Ark. 338, 220 S.W. 450; *State ex rel. Small* v. *Hughes County Commission* (1965), 81 S.D. 238, 133 N.W.2d 228. However, in order to ascertain the true intent of the Legislature, we have made an extensive study of the legislative history of the Public Purchase Act and a study of other Indiana competitive bidding statutes. *Cf. Harris* v. *City of Muncie* (1975), 163 Ind. App. 522, 325 N.E.2d 208. We now reluctantly conclude that the trial court was correct in its determination that there are no laws in Indiana requiring competitive bidding procedures for the lease of equipment by boards of county commissioners.

Neither the current version of IC 1971, 5-17-1-1 nor prior versions make reference to the "lease of equipment," nor have we found any Indiana case interpreting IC 1971, 5-17-1-1 [or IC 1971, 17-1-24-35] to cover the "lease of equipment." We do note, however, that in 1947, two years after IC 1971, 5-17-1-1 was enacted,[5] the Legislature passed the "Financial Reorganization Act of 1947," IC 1971, 4-13-2-1—4-13-2-29, specifically requiring that competitive bidding procedures cover the lease of equipment by state agencies. IC 1971, 4-13-2-11 (Burns Code Ed.). The Legislature is presumed to be aware of existing statutes on the same subject. *Economy Oil Corp.* v. *Ind. Dept. of State Revenue; Wayne Township* v. *Lutheran Hospital, supra.* However, no proposed amendment or actual amendment to IC 1971, 5-17-1-1 since the passage of the Financial Reorganization Act has contained a provision to include the "lease" of equipment within the competitive bidding procedures of the Public Purchases Act.[6] Our deter-

---

5. The Public Purchases Act repealed Ch. 129, §§ 1-14, [1943] Ind. Acts 385 (repealed 1945) which also made no reference to the lease of equipment.

6. We would also point out that no amendment or proposed amendment to IC 1971, 17-1-24-35 (Burns Code Ed.) has contained a provision to add the word "lease" to that provision.

mination that the word "purchase" in IC 1971, 5-17-1-1 was not intended by the Legislature to include "lease" is further bolstered by other statutes concerning the purchase of equipment wherein the legislature has explicitly set out the word "lease" as well as the word purchase. See IC 1971, 19-9-6-12; Ind. Ann. Stat. § 48-7540 (Burns 1975 Supp.) ["The hospital board of directors shall have the power to purchase or lease equipment. . . ."] ; IC 1971, 5-17-2-1 (Burns Code Ed.) ["The director of the division of procurement and supply . . . may enter into any agreement or contract with the federal government, for the lease, purchase or use of any equipment. . . ."]. We can only conclude that if the Legislature had intended to require boards of county commissioners to follow competitive bidding procedures for the lease of equipment, they would have explicitly provided therefor as in IC 1971, 4-13-2-11.

The trial court correctly determined the above questions of law and Angel has failed to demonstrate that the trial court abused its discretion in denying his application for a preliminary injunction. We affirm the trial court's judgment.

Hoffman, J., and Garrard, J., concur.

NOTE.—Reported at 337 N.E.2d 503.