HAROLD H. NEGLEY, SUPERINTENDENT OF PUBLIC INSTRUCTION OF THE STATE OF INDIANA v. LEBANON COMMUNITY SCHOOL CORPORATION AND LEBANON ELEMENTARY SCHOOL BUILDING CORPORATION.

[No. 1-1176A225. Filed April 27, 1977. Rehearing denied May 19, 1977. Transfer denied July 20, 1977.]

*Theodore L. Sendak,* Attorney General, *Arthur Thaddeus Perry,* Deputy Attorney General, for appellant.

*J. V. Boles, Kendall, Stevenson & Lowry,* of Danville, *David S. Richey, Parr, Richey, Obremskey & Morton,* of Lebanon, for appellees.

ROBERTSON, C.J.—Harold Negley, Superintendent of Public Instruction of the State of Indiana (hereinafter Superintendent), appeals from an interlocutory order enjoining him from preventing the utilization of the "Design-Build" process in constructing a new elementary school by the Lebanon Community School Corporation and the Lebanon Elementary School Building Corporation.

The Lebanon Community School Corporation (School Corporation) operates the school system in Lebanon, Indiana. The School Corporation intended to construct a new elementary school building in Lebanon in conjunction with the Lebanon Elementary School Building Corporation (Building Corporation). The Building Corporation was established pur-

suant to IC 1971, 21-5-11-1 *et seq.* (Burns Code Ed.) to construct and finance the elementary school and then lease it to the School Corporation.

The Building Corporation used the "Design-Build" concept in formulating specifications and plans for the building. "Design-Build" is a relatively new concept in the construction of school buildings. Under the "Design-Build" concept a school building corporation prepares a preliminary set of performance specifications for the construction project. These specifications are put out for bids, and the contractors and architects, using the specifications, submit proposals to design and build the project at a guaranteed price. Thus, instead of having a number of bids on the same design, each proposal represents a complete and different design. The building corporation then evaluates the proposed designs and elects the best and lowest bid.

The School Corporation submitted its educational and performance specifications to be used with the "Design-Build" process to the Department of Public Instruction. The Superintendent granted preliminary approval to the School Corporation's plans on June 28, 1976. Pursuant to this preliminary approval, the School Corporation proceeded to obtain six-month options on land upon which to build the school building. The performance specifications were then put out for bids, and a number of proposals were received.

Prior to the Superintendent's preliminary approval of the School Corporation's building plans, the Attorney General, in Official Opinion No. 8, May 26, 1976, stated that a school corporation could not use the "Design-Build" concept because such procedure was not in compliance with this State's competitive bidding statutes, IC 1971, 5-16-1-1 *et seq.* (Burns Code Ed.). Subsequently, on July 28, 1976, the Attorney General, in response to an inquiry made by the Superintendent, issued an advisory letter to the Superintendent stating that school

building corporations could not employ the "Design-Build" method because such was in contravention of the competitive bidding statutes. The Superintendent, thereafter, refused to give final approval to the School Corporation's and Building Corporation's plans to proceed under the proposed "Design-Build" process.

On August 27, 1976, the School Corporation and Building Corporation initiated this action seeking a declaratory judgment as to the use of "Design-Build" and to temporarily enjoin the Superintendent from prohibiting the construction of the elementary school until a final determination on the merits had been made. After a hearing on the application for a preliminary injunction, the trial court entered its findings of fact and conclusions of law and issued the following order granting the preliminary injunction:

> "IT IS, THEREFORE, CONSIDERED, ORDERED, ADJUDGED AND DECREED BY THE COURT that Plaintiffs; Request for Temporary Injunction be and the same hereby is granted, and the Defendant, Harold H. Negley, Superintendent of Public Instruction of the State of Indiana, be and hereby is enjoined and restrained from denying to Plaintiffs the utilization of the "Design-Build" process whereby Plaintiff, Lebanon Elementary School Building Corporation would construct, finance and own the Stokes Elementary School Building and lease the same to Lebanon Corporation."

The Superintendent appeals from the trial court's interlocutory order granting the preliminary injunction, alleging that the trial court's conclusions of law are erroneous and contrary to law. The sole issue presented for our review is whether the public bidding requirements found in IC 1971, 5-16-1-1 *et seq.* (Burns Code Ed.) apply to the arrangement wherein a school building corporation constructs and owns a school building and leases it to a school corporation.

The grant or denial of a preliminary injunction rests within the sound discretion of the trial court, and this Court will

not interfere with the exercise of that discretion unless it is shown that the trial court's action was arbitrary or constituted a clear abuse of discretion. *Rosenburg* v. *Village Shopping Center, Inc.* (1968), 251 Ind. 1, 238 N.E.2d 642. In determining whether an abuse of discretion exists, we are necessarily involved with a review of the trial court's findings of fact and conclusions of law. *Angel* v. *Behnke* (1975), 166 Ind. App. 541, 337 N.E.2d 503. This Court may not set aside the trial court's findings or judgment unless they are clearly erroneous. Indiana Rules of Procedure, Trial Rule 52. Thus, if the findings of fact or conclusions of law are clearly erroneous, we may conclude that the trial court abused its discretion in granting a preliminary injunction. *Angel* v. *Behnke, supra.*

The Superintendent contends that the following conclusion of law is clearly erroneous and an incorrect interpretation of the statutes:

"2. That the Public Works Statutes and, specifically the public competitive bidding requirements found at IC 1971, 5-16-1-1 through 5-16-1-3, do not apply where a municipal corporation is leasing property and thus are not binding upon a school building corporation which constructs, finances and owns a school building and leases it to a school corporation, such as Plaintiffs' [sic] in this cause."

We are of the opinion that the trial court correctly interpreted the law, and we, therefore, find no abuse of discretion in the trial court's grant of the prelimnary injunction.

The Superintendent maintains that school corporations and school building corporations must comply with the applicable competitive bidding requirements before entering into the construction of school building. The Building Corporation and School Corporation counter by asserting that lease agreements do not fall within the ambit of the competitive bidding statutes.

The statutory requirements concerning competitive bidding

for public works are found in IC 1971, 5-16-1-1 (Burns Code Ed.) which in pertinent part provides as follows:

"When any public building or any other public work or improvement of any character whatsoever is to be constructed, erected, altered or repaired at the expense of the state or at the expense of any county, city, town, township, school corporation, public utility owned or operated by any city of the second, third, fourth, or fifth class or by any town, or other political subdivision, or commission created by law excepting the state highway department of Indiana, and when the estimated costs of such work or improvement will be five thousand dollars [$5,000] or more, it shall be the duty of the board, commission, trustee, officer or agent acting on behalf of the state, county, city, town, township, school corporation, public utility owned or operated by any city of the second, third, fourth or fifth class or by any town, or other political subdivision or commission created by law, excepting the state highway department, to adopt plans and specifications and award a contract for such public work or improvement to the lowest and best bidder who submits a bid for the performance thereof. . . .

". . . Provided, however, That no construction or alteration of any public building, the estimated cost of which is more than five thousand dollars [$5,000] shall be undertaken by any officer or agent hereinbefore mentioned or referred to except pursuant to and in compliance with plans and specifications therefor approved by a duly licensed architect or engineer: Provided further, That said requirement as to compliance with plans and specifications therefor to be approved by a duly licensed architect or engineer shall apply to the construction or alteration of a public school building only when the estimated cost of such construction or alteration is more than five thousand dollars [$5,000]. For the purpose of securing such bids and/or for the purpose of causing the work to be done in the desired manner, the state, county, city, town, township, school corporation, public utility owned or operated by any city of the second, third, fourth or fifth class or by any town, or other political subdivision or commission created by law, excepting the state highway department, shall cause to be prepared and placed on file in the office of said unit of government, plans and specifications of the building or public improvements sought to be constructed, erected, altered or repaired whenever the estimated cost of the work exceeds five thousand dollars [$5,000]."

The statute clearly requires school corporations, in constructing school buildings at the public's expense, to submit plans and specifications for competitive bids and to accept the lowest and best bid.

While IC 1971, 5-16-1-1 specifically mandates school corporations to comply with the competitive bidding process, it makes no reference to school building corporations. IC 1971, 21-5-11-1 (Burns Code Ed.) provides that school corporations may lease school buildings for the use of the school corporation under certain circumstances. IC 1971, 21-5-11-2 (Burns Code Ed.) designates that school corporations may only lease school buildings under IC 1971, 21-5-11-1 from qualified lessor holding corporations. Such lessor corporations are commonly referred to as school building corporations and are defined in the statute. IC 1971, 21-5-11-2 provides that:

"No school corporation or corporations shall enter into a contract of lease, under the provisions of this act [21-5-11-1—21-5-11-16], except with a corporation organized under the laws of the State of Indiana solely for the purpose of acquiring a site, erecting thereon a suitable school building or buildings, leasing the same to such school corporation or corporations, collecting the rentals therefor and applying the proceeds thereof in the manner herein provided. Such lessor corporation shall act, entirely without profit to the corporation, its officers, directors and stockholders but shall be entitled to the return of capital actually invested, plus interest or dividends on outstanding securities or loans, not to exceed five per cent [5%] per annum and the cost of maintaining its corporate existence and keeping its property free of encumbrance. Upon receipt of any amount of lease rental by such lessor corporation over and above the amount necessary to meet incidental corporate expenses and to pay dividends or interest on corporate securities or loans, such excess funds shall be applied to the redemption and cancellation of its outstanding securities or loans as soon as may be done."

It becomes apparent from a reading of IC 1971, 21-5-11-1—21-5-11-16 that a lessor corporation (school building corpora-

tion) is a private not-for-profit corporation established for the sole purpose of constructing a school building to lease to a school corporation. Whether school building corporations need comply with the competitive bidding requirements is the question which we must now answer.

A school building corporation proposing to build a school building must submit the plans and specification for such building to the lessee school corporation prior to the execution of the lease. IC 1971, 21-5-11-4 states that:

> "The lessor corporation proposing to build such a school building or buildings, including the necessary equipment and appurtenances thereof, shall submit to the lessee or lessees, prior to the execution of a contract of lease, plans, specifications and estimates for such building or buildings, and such plans and specifications shall be submitted to the state board of health, state fire marshal and such other agencies as may be designated by law to pass on plans and specifications for school buildings, and such plans and specifications shall be approved by such agencies in writing and the lessee or lessees prior to the execution of such contract or lease."

While this statute requires the lessor corporation to submit plans and specifications for approval, it is silent as to bidding requirements. In fact, Chapter 11 (IC 1971, 21-5-11-1—21-5-11-16) makes no mention of competitive bidding under such arrangements whereby the lessor corporation constructs a school building and leases it to a school corporation. Thus, we would be without legislative guidance in determining whether IC 1971, 5-16-1-1 applies to school building corporations if it were not for IC 1971, 21-5-11-15 which states that:

> "This act [21-5-11-1—21-5-11-16] is intended to be and shall be construed as being supplemental to all existing laws covering the acquisition, use and maintenance of school buildings by school corporations: Provided, *That as to school buildings constructed, acquired, leased or purchased pursuant to the provisions of this act, it shall not be necessary to comply with the provisions of other laws concerning the acquisition, use and maintenance of school buildings by*

*school corporations except as herein specifically required:*
Provided further, That the provisions of this act shall not
apply to any school corporation, or joint or consolidated
school corporation, the schools of which do not have a
total enrollment of two hundred and fifty [250] or more
pupils." (Our emphasis).

IC 1971, 21-5-11-15 unequivocally states that school build-
ing corporations and school corporations need not comply
with the provisions of other laws unless specifically
required in the act. As we stated previously, this act
(IC 1971, 21-5-11-1—21-5-11-16) does not refer to
the competitive bidding process as required in IC 1971, 5-
16-1-1. Thus, it is apparent that school building corporations,
when constructing school buildings for lease to school corpora-
tions, are not required to comply with those statutes which
mandate competitive bidding when public buildings are con-
structed or repaired at public expense.

The Superintendent, in his brief, agrees that IC 1971,
21-5-11-15 would appear to exclude school building corpora-
tions from the competitive bidding requirements of IC 1971,
5-16-1-1. However, he argues that the School Powers Act,
IC 1971, 20-5-2-1 *et seq.* (Burns Code Ed.), is in conflict with
IC 1971, 21-5-11-15 and should control because it was enacted
at a later time.

.: The School Powers Act of 1965 gives to school corporations
certain general and specific powers. One of the specific powers
is the right:

"To acquire, construct, erect, maintain, hold, and to
contract for such construction, erection or maintenance, of
such real estate, or real estate improvements, or any interest
in either, as the governing body deems necessary for school
purposes, including but not limited to buildings, parts of
buildings, additions to buildings, rooms, gymnasiums, play-
grounds, playing and athletic fields, facilities for physical
training, buildings for administrative, office, warehouse,
repair activities, or housing of school owned buses, land-
scaping, walks, drives, parking areas, easements and fa-
cilities for power, sewer, water, roadway, access, storm

and surface water, drinking water, gas, electricity, other utilities and similar purposes, by purchase, either outright for cash (or under conditional sales or purchase-money contracts providing for a retention of a security interest by seller until payment is made or by notes where such contract, security retention or note is permitted by applicable law), by exchange, by gift, by devise, by eminent domain *by lease with or without option to purchase, or by lease under Acts 1947, c. 273 [21-5-11-1—21-5-11-16]*, Acts 1953, c. 264 [21-5-10-1—21-5-10-3], Acts 1963 Spec. Sess., c. 23 [21-5-11-10] and Acts 1957, c. 275 [21-5-12-1—21-5-12-11] ; and to repair, remodel, remove or demolish any such real estate, real estate improvements, or interest in either, as the governing body deems necessary for school purposes, and to contract therefor." IC 1971, 20-5-2-2 (3) (Burns Code Ed.). (Our emphasis).

In exercising this power to purchase and contract, school corporations must comply with the ". . . applicable law relating to purchases and contracting in general. . . ." IC 1971, 20-5-2-2 (4) (Burns Code Ed.). Thus, school corporations must comply with this State's competitive bidding requirements. However, these statutes governing the powers of school corporations do not refer to or in any way affect the powers of lessor corporations (school building corporations).

We agree that school corporations are specifically required to comply with the competitive bidding statutes when constructing or contracting for the construction of school buildings. However, in the present case, the School Corporation is not constructing the new elementary school building in Lebanon. The Building Corporation is the party building and financing the school, and IC 1971, 21-5-11-15 states that under these circumstances the Building Corporation is not bound by the dictates of other laws.

We are mindful that the purpose of competitive bidding statutes is "to safeguard the public against fraud, favoritism, graft, extravagence, improvidence and corruption, and to insure honest competition for the best work or supplies at the lowest reasonable costs." *School*

*City of Gary* v. *Continental Electric Co.* (1971), 149 Ind. App. 416 at 419, 273 N.E.2d 293 at 296. We believe that the public interest would be best served by requiring school building corporations to comply with our competitive bidding statutes. However, as we stated in *Angel* v. *Behnke, supra,* 337 N.E.2d at 509:

"... when the language used in a statute is unambiguous, this Court may not expand or contract the meaning of the statute by reading into it language which in the opinion of the Court corrects supposed defects." (Citations omitted).

We can only conclude that if the legislature had intended school building corporations to comply with competitive bidding practices, they would have so provided in the act (IC 1971, 21-5-11-1—21-5-11-16) which enables school building corporations to construct school buildings for lease to school corporations.

The trial court correctly interpreted the applicable statutes, and the Superintendent has failed to show an abuse of discretion. We must therefore affirm the trial court's order granting the preliminary injunction.

Affirmed.

Lowdermilk and Lybrook, JJ., concur.

NOTE.—Reported at 362 N.E.2d 178.