# MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Dec 29 2016, 8:45 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEYS FOR APPELLANT

Maggie L. Smith
Amy S. Wilson
Darren A. Craig
Jenai M. Brackett
Frost Brown Todd LLC
Indianapolis, Indiana

ATTORNEYS FOR APPELLEES

Kathleen A. DeLaney
Christopher S. Stake
DeLaney & DeLaney LLC
Indianapolis, Indiana

## IN THE
# COURT OF APPEALS OF INDIANA

Angie's List, Inc.,

*Appellant-Plaintiff,*

v.

Rick Myers, Maggie Leonard, and Brock Crabtree,

*Appellees-Defendants*

December 29, 2016

Court of Appeals Case No.
29A02-1605-PL-1061

Appeal from the Hamilton Superior Court

The Honorable Daniel J. Pfleging, Judge

Trial Court Cause No.
29D02-1601-PL-588

**Baker, Judge.**

Angie's List, Inc. (Angie's List), appeals the judgment of the trial court, which denied Angie's List's request for a preliminary injunction against Rick Myers, Maggie Leonard, and Brock Crabtree, and which dissolved a previously-issued temporary restraining order. The defendants are former employees of Angie's List who, as part of their employment agreement with the company, covenanted to return any proprietary information to the company and not to solicit company employees after their employment ended. Instead, the defendants emailed hundreds of pages of company documents to their personal email accounts during their final days with the company, or communicated with Angie's List employees about leaving the company to join a competitor, or both. We find that the trial court properly denied Angie's List's request to enjoin the defendants from working for the competitor, but that the trial court improperly declined to enjoin them from any future violations of their covenants with Angie's List. Accordingly, we affirm in part, reverse in part with instructions, and remand for further proceedings.

# Facts

Myers, Leonard, and Crabtree are former employees of Angie's List. While Angie's List did not ask them to execute a covenant not to compete, they were required to execute a confidentiality agreement and to agree to comply with a code of ethics. The confidentiality agreement required employees to "hold in strictest confidence and . . . not disclose, use, lecture upon or publish any of the Company's Proprietary Information . . . except as . . . may be required in connection with [their] work for the Company . . . ." Pl.'s Ex. 1. Employees

also agreed to the following: "When I leave the employ of the Company . . . I will deliver to the Company any and all drawings, notes, memoranda, specifications, devices, formulas, and documents, together with all copies thereof, and any other material containing or disclosing any Company Inventions, Third Party Information or Proprietary Information of the Company." *Id.* The employees also agreed that, for the period of their employment and one year thereafter, they would not "solicit, contact or encourage" Angie's List's employees to leave the company for another. *Id.*

[3] The company's code of ethics defines confidential proprietary information as "all non-public information that might be useful to competitors or that could be harmful to the Company, its members or its suppliers if disclosed." Pl.'s Ex. 3. The code also reinforces a promise made in the confidentiality agreement regarding proprietary information: "Your obligation to protect the Company's proprietary and confidential information continues even after you leave the Company, and you must return all proprietary information in your possession upon leaving the Company." *Id.*

[4] Leonard was hired by Angie's List in October 2013, and she quickly became a top sales representative at the company. Angie's List allowed and encouraged her to use her personal email account for business purposes so that she could make sales calls from her home. She informed her manager on December 28, 2015, that she was planning to resign by the end of that month so that she could work for HomeAdvisor, a competitor of Angie's List. According to Leonard, her manager warned her that the company would force her to leave that day

and would fire her boyfriend, who also worked at the company, in retaliation. As the manager left to go to a meeting, Leonard began emailing herself hundreds of pages of documents; she later testified that she had personal information on the computer, and to preserve this information she began emailing the contents of her computer to her personal email account, planning to sort through it later.[1] She also put the entire contents of her desk into a bag, which she took to her car. Her manager saw her emailing a document and told her to stop, but told her that she could email herself an Excel spreadsheet that she had created to monitor her sales.

[5] Myers began working at Angie's List in March 2013. His job involved closing sales to service providers. Like Leonard, he decided to move to HomeAdvisor, and he told Angie's List that his last day would be December 18, 2015. Also like Leonard, he began emailing hundreds of pages of documents to his personal email account.[2] In addition, according to the testimony of fellow Angie's List employee Melissa Card-Kraus, Myers began encouraging her to leave the company for HomeAdvisor. Even though they worked in the same vicinity and had work phones, Myers would call Card-Kraus on his cell phone and say, "I'm going to HomeAdvisor. I'm working with the top guy. I'm

---

[1] Among the information Leonard took were documents relating to different zoning schemes Angie's List used to target customers, consumer profiles and reviews, demographic data, advertising schemes, documents with "internal use only" printed as a watermark, a list of the top sellers from the company, and a spreadsheet of her team's sales statistics.

[2] The documents Myers took mainly related to Angie's List's future business strategies, plans to improve customer relations, and several documents watermarked "internal use only."

building a team. You're at the top of my list." Tr. p. 255.[3] The day after he left Angie's List, he went to a business meeting with HomeAdvisor and sent the following text message to several Angie's List employees: "Brock [Crabtree] and I are on a flight from Chicago to Kansas City. We are going to be leveraging AL and HA positions to get what everyone deserves. You will be happy but remember to keep your poker face on." Pl. Ex. 8.

[6] Crabtree began working at Angie's List in February 2013, but was fired in August 2015. While Leonard was still working there, Crabtree sent her the contact information for HomeAdvisor. As mentioned above, he was also part of the group text regarding leveraging Angie's List employees' skills to obtain positions at HomeAdvisor.

[7] After Leonard and Myers left Angie's List, the company reviewed their email accounts and found that they had been emailing themselves company documents. The company sent the three employees cease and desist letters, and on January 22, 2016, filed a complaint and a request for a temporary restraining order (TRO), seeking "to enjoin Employee Defendants from using or disclosing Angie's List's confidential business information and trade secrets, and to compel Defendants to return the confidential information and trade secrets Myers and Leonard and any other Defendants took." Appellant's App. p. 37. It also requested that the court enjoin Myers and Leonard from working for

---

[3] Myers testified that, while these interactions took place, it was Card-Kraus who initiated the conversations.

HomeAdvisor until they could prove that they no longer possessed confidential information. After a January 25, 2016, hearing, a magistrate judge granted the TRO in part, ordering the employees to return any documents they took from Angie's List, to refrain from sharing the confidential information, and to refrain from soliciting any other Angie's List employees to leave their jobs. The trial court did not grant Angie's List's request that the defendants be prevented from working for HomeAdvisor.

[8] On February 5, 2016, Angie's List filed a motion for preliminary injunction. After a March 2, 2016, hearing, the trial court on April 13, 2016, denied Angie's List's motion and dissolved the previously-issued TRO. Angie's List now appeals.

## Discussion and Decision

[9] When reviewing findings of fact and conclusions of law entered upon the denial of a motion for preliminary injunction pursuant to Trial Rule 52(A)(1), we must determine if the trial court's findings support its judgment and will reverse the judgment only when clearly erroneous. *M.K. Plastics Corp. v. Rossi*, 838 N.E.2d 1068, 1074 (Ind. Ct. App. 2005). Findings of fact are clearly erroneous only when the record lacks any evidence or reasonable inferences therefrom to support them. *Id.* The trial court's judgment is clearly erroneous only if it is unsupported by the findings and the conclusions that rely upon those findings. *Id.* We will neither reweigh the evidence nor reassess witness credibility. *Id.* We will reverse only if the trial court's decision is against the logic and effect of

the facts and circumstances before the trial court or when the trial court misinterprets the law. *Richie v. Cmty. Howard Reg'l Health*, 51 N.E.3d 1212, 1216 (Ind. Ct. App. 2016).

[10] In seeking a preliminary injunction, Angie's List had the burden of establishing: (1) that its remedies at law are inadequate, causing irreparable harm pending resolution of its lawsuit; (2) that it has at least a reasonable likelihood of success on the merits at trial; (3) that the threatened injury to Angie's List outweighs the potential harm to the defendants resulting from the proposed injunction; and (4) that the public interest would not be disserved by the granting of injunctive relief. *M.K. Plastics*, 838 N.E.2d at 1075. An injunction is an extraordinary remedy that should be granted only in rare instances where the law and facts are clearly within the moving party's favor. *Id.*

[11] We first find that the trial court's judgment was not clearly erroneous insofar as it declined to enjoin the defendants from working for HomeAdvisor. Angie's List had the burden of proving that the threatened injury to Angie's List from these employees working for HomeAdvisor outweighed the potential harm to the employees of not being able to work. As HomeAdvisor is now the main source of income for the defendants, the trial court did not err by finding that the potential harm of an injunction against working and earning income outweighed the threatened injury to Angie's List.

[12] The other aspects of the trial court's decision, however, are not as clearly supported by the record or the law. We note that, while the trial court's order

analyzes Angie's List's claims under the Indiana Uniform Trade Secrets Act,[4] it never once mentions or analyzes the confidentiality agreement the defendants signed as employees of Angie's List. The existence of these covenants was uncontroverted, and while trial courts have broad discretion to weigh evidence as they see fit, they "cannot ignore competent, uncontradicted evidence." *Steenhoven v. College Life Ins. Co. of America*, 458 N.E.2d 661, 666 n.13 (Ind. Ct. App. 1984).

[13] In finding that Angie's List did not have protectable trade secrets, the trial court also made several errors of law. Indiana Code section 24-2-3-2(1) defines a trade secret as information that "derives independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable by proper means by other persons who can obtain economic value from its disclosure or use." Rather than go through all eighty-nine findings of fact and law, we will note four types of error that run through the trial court's order.

[14] First, the trial court emphasized that Angie's List employees were allowed to take documents home so that they could make sales calls outside of the office. The trial court concluded that, therefore, this information was not secret and that Angie's List did not take the proper steps to secure it. But this conclusion ignores the confidentiality agreement whereby the employees promised to

---

[4] Ind. Code § 24-2-3-1, *et seq.*

refrain from sharing the information with others who might obtain economic value from the information. And it ignores the company's code of ethics, which mandated that the employees "*return* all proprietary information in your possession upon leaving the Company." Pl.'s Ex. 3 (emphasis added).

[15] Second, the trial court emphasized that there were no exit interviews, that no one specifically asked the defendants not to take documents, and that no one asked the defendants to return documents they may have taken. But these factual findings are irrelevant to the case; the defendants promised to return all confidential information to Angie's List and Angie's List was under no obligation to remind the defendants of this promise in order to enforce it.

[16] Third, the trial court emphasized that Angie's List could not prove that the information had been shared. Again, the defendants did not only agree to refrain from dispersing company documents; they agreed to *return* all confidential information, but did the opposite by emailing hundreds of pages to their personal email accounts.

[17] And fourth, the trial court emphasized the defendants' testimony that they did not take confidential documents for a malicious purpose. For instance, Leonard admitted that she emailed herself a list of the top salespersons at Angie's List, which could easily be used by HomeAdvisor to solicit the most productive workers from Angie's List, but she testified that she only wanted the list because she was proud that she was a top earner. But the confidentiality agreement does not include an exception for company documents to which an

employee has a sentimental attachment; it requires that the documents be returned, regardless of the intent behind taking them.

[18]     In short, the defendants' confidentiality agreements obligated them to return Angie's List documents. Regardless of their intent, or the lack of reminder, or the permitted access during their employment, or the absence of sharing those documents with third parties, the defendants emailed themselves hundreds of pages of confidential information and did not return the information upon leaving the company. The trial court's decision to deny a preliminary injunction against sharing this information and dissolve the TRO prohibiting the defendants from sharing any confidential information they may still possess was against the logic and effect of the facts before the trial court.

[19]     As we turn to the employees' covenant not to solicit employees away from Angie's List, we note that the one-year period of non-solicitation has already expired for Crabtree, who was fired from Angie's List in August 2015. Whether Crabtree should have been enjoined from soliciting employees is therefore moot, and we will not address the issue.[5]

[20]     As for Myers, the trial court made a factual finding that "Myers has not solicited, contacted, or encouraged employees of Angie's List to end their

---

[5] We also note that the issue will be moot for Myers in December 2016, but as of the date of writing, the issue is still in controversy.

employment at Angie's List, and/or join HomeAdvisor." Appellant's App. p. 21.

[21] The trial court does not mention Myers's text message, sent to several then-current Angie's List employees, that he and Crabtree were "going to be leveraging AL and HA positions to get what everyone deserves. You will be happy but remember to keep your poker face on." Pl.'s Ex. 8. At the least, this message was contacting and encouraging Angie's List employees to leave their jobs. The trial court's finding to the contrary is simply against the logic and effect of the facts before it. We find the trial court's decision to decline to enjoin Myers from engaging in this behavior for the remaining months of his covenant to be error.

[22] In summary, the trial court properly found that an injunction against working for HomeAdvisor would unduly burden the employees, and it properly ruled in the employees' favor on that issue. But the evidence unambiguously shows that Leonard and Myers, at the very least, took and failed to return proprietary information. And the evidence unambiguously shows that Myers, at the very least, contacted and encouraged Angie's List employees to leave their jobs to join HomeAdvisor. As the employees covenanted not to take company documents and not to solicit employees away from the company, the trial court should have granted Angie's List's request for a preliminary injunction on these matters.

[23]     The judgment of the trial court is affirmed in part, reversed in part, and remanded with instructions to enter a preliminary injunction against the defendants to act in accord with their covenants.

Mathias, J., and Pyle, J., concur.