SCHOOL CITY OF GARY, INDIANA, ET AL. *v*. CONTINENTAL ELECTRIC CO., INC.

[No. 1270A276. Filed September 20, 1971.]

*Julian B. Allen, Clarence Borns, Gregory S. Reising,* of Gary, for appellants.

*Barnard M. Mamet,* Chicago, Illinois, *Robert L. McLaughlin, Wooden, Stark, McLaughlin and Sterner,* of Indianapolis, for appellees.

ROBERTSON, J.—This is an appeal from the Lake Superior Court where the plaintiff-appellee (hereinafter referred to as Continental) brought an action to enjoin the defendant-appellant (hereinafter referred to as the school) from awarding an electrical construction contract to another company (Gibson Electric), and to mandate the school to award the contract to Continental.

The facts leading to this appeal may be summarized as follows: The school advertised for bids on the remodeling of the Pulaski Junior High School. Continental and Gibson submitted their bids for the electrical portion of the work in accordance with the pertinent specifications. The bids were

opened revealing Continental bidding $472,543 and Gibson bidding at $482,861, the resulting spread being 2.8%. The bidders also submitted their bids in compliance with the school's Specification 3.3 which embodies the Indiana Civil Rights Act.[1]

In accordance with the custom of the school's past practices, their construction department and the architect examined the bids and recommended Continental for the work.

The school, at a meeting subsequent to the opening of the bids, expressed concern over the fact that there was not sufficient "affirmative action" in the employment of minority groups on projects like the Pulaski school. The school wrote to Continental and Gibson requesting submission of their "present policy or plan of affirmative action for the employment of minority groups."

After receiving the responses of both companies, the school awarded the contract to Gibson based upon their expressed intent to enter into a joint venture with a Negro entrepeneur.

Suit was filed by Continental to enjoin the school from awarding the contract to Gibson, and to mandate award of the contract to itself as the lowest and best bidder. The trial court held the actions of the school to be a clear abuse of discretion, tantamount to constructive fraud, and granted the requested relief to Continental. On appeal the school alleges not only that the action of the trial court was contrary to law and not supported by the evidence, but also that there were numerous procedural errors.

---

1. The Indiana Civil Rights Act, IC 1971 22-9-1-1—22-9-1-12; 22-9-2-1—22-9-2-11, being Ind. Ann. Stat. §§ 40-2307—2328 (Burns 1965), generally provides for the promotion of equal opportunity for education, employment, access to public conveniences and accommodations and the acquisition or rental of real property. More specifically, IC 1971 22-9-1-10, being Ind. Ann. Stat. § 40-2316 (Burns 1965), provides that as to public contracts, contractors and their subcontractors shall not discriminate "against any employees or applicant for employment . . . with respect to his hire, tenure, terms, conditions or privileges of employment or any matter directly or indirectly related to employment, because of his race, color, religion, national origin or ancestry."

Whenever public moneys are encumbered by a governmental agency, a solemn duty arises to protect these moneys. Competitive bidding requirements have been legislated to safeguard the public against fraud, favoritism, graft, extravagance, improvidence and corruption, and to insure honest competition for the best work or supplies at the lowest reasonable cost. Such safeguards provide that there be advertisements for bids and that public contracts be awarded to the lowest and best bidder.[2]

IC 1971 5-16-1-1, being Ind. Ann. Stat., § 53-108 (Burns 1964), provides that:

> ". . . it shall be the duty of the trustee[s] . . . acting on behalf of the . . . city . . . school corporation . . . to adopt plans and specifications and award a contract for such public work or improvement to the lowest and best bidder who submits a bid for the performance thereof. . . ."

The awarding body is required to award the contract to the lowest bidder who is also the best bidder. Which bidder is lowest is purely an objective matter determined mathematically upon the date when the bids are publicly opened and the bids are read.

Which bidder is "best" is primarily a subjective determination. IC 1971 5-16-1-2, being Ind. Ann. Stat., § 53-109 (Burns 1964), does provide guidelines to be considered in determining the best bidder:

> ". . . for the purpose of enabling such . . . trustee[s] . . . to ascertain and determine which of the bidders submitting bids for the performance of any such public work is, in the judgment of such . . . trustee[s] . . ., the lowest and/or best bidder and to exercise intelligently the discretion hereby conferred on such . . . trustee[s] . . . each bidder shall be required to submit under oath with and as part of his bid a statement of his experience, his proposed plan for performing such work and the equipment which he has available for the performance of such work and a financial statement."

---

2. See McQuillen, 10 Mun. Corp. (3rd Ed.) § 29.29: Note 10 Syracuse Law Review 271 (1959).

In *Lee* v. *Browning* (1932), 96 Ind. App. 282, 182 N. E. 550, in which trustees of a school were required by law to award a school busing contract to the "lowest or best responsible bidders," many other factors were felt to be significant:

"Aside from financial responsibility it has been held that that ability and capacity, capital, character, and reputation, competency and efficiency, energy, experience, facilities, faithfulness and fidelity, fraud or unfairness in previous conduct, honesty, judgment, promptness, quality of previous work, suitability to the particular task, are proper elements to be taken into consideration in determining the responsibility of a bidder on public contracts." 182 N. E. 550, 551.

The decision of the school as to bid awards cannot be overturned by the trial court unless such decision is arbitrary, corrupt or fraudulent. *Budd* v. *Bd. of Co. Comrs. of St. Joseph Co.* (1939), 216 Ind. 35, 22 N. E. 2d 973. The general rule as adopted in *Haywood Publishing Co.* v. *West* (1942), 110 Ind. App. 568, 573-574, 39 N. E. 2d 785, is that:

"[I]n awarding contracts of this nature, public authorities are vested with discretion in determining who is the lowest and best bidder, and their decision will not be interfered with by the courts, even if erroneous, provided it is based on a sound and reasonable discretion founded on facts and exercised in good faith, in the interest of the public, without collusion or fraud, nor corruptly, nor from motives of personal favoritism or ill-will, and not abused."

The facts relevant to the award of the electrical contract here were that Continental, at the time of the award, (1) was a local firm which had been located in Gary since 1952; (2) that it specialized in institutional electrical construction work and that 70-75% of its work was for public bodies; (3) that it had in the past performed 25 electrical contracts for the School City of Gary, and that no other electrical contractor had performed more contracts for the School City of Gary; (4) that all past work had been found satisfactory; (5) that it was currently engaged in other electrical construction

projects in the locality and was therefore utilizing the labor force in the area at the time of the award; (6) that it was the lowest bidder; and (7) that after all of its qualifications had been examined Continental had been recommended by both the architects and the special bid-reviewing committee appointed by the Trustees of the School City as the lowest and best bidder. In contrast was Gibson, which at the time of the award (1) was the highest bidder; (2) had no office in Indiana; (3) had previously performed only two small jobs in the area; (4) had never performed work for the School City of Gary; (5) had no employees; and (6) had never had its experience, business, financial and other qualifications examined by the Trustees of the School City, the special bid-reviewing committee, or the architects. Upon the basis of these facts alone, the legal duty to award the contract to Continental would appear evident. An additional factor was, however, injected into the award determination.

The evidence indicates that the school's decision was based wholly upon responses to the written requests for "affirmative action" plans for employment of minority workers, rather than on factors inclusive of, but not restricted to, racial hiring practices, which factors properly determine the "best" bidder. The trial court's view of the factual background and effect of the school's interpretation of such affirmative action plan is set out in the Court's rather lengthy Conclusion of Law #6:

> "Even assuming, *in arguendo*, that the defendants had the authority to request bidders to submit affirmative action plans as regards the employment of employees from minority groups and even assuming, *in arguendo*, that the defendants had the statutory authority to exercise discretion in determining the 'best' bidder by evaluating the affirmative action plans so submitted, the defendants acted arbitrarily and capriciously and grossly abused whatever discretion may have been conferred upon them. The defendants favored Gibson Electric Company of Indiana, Inc. because Gibson stated that it 'intended' to engage in a joint venture with Solar-Ray Company, owned by a Negro entrepreneur. The affirmative action program submitted by Gibson was not an affirmative action program for the em-

ployment of minority employees engaged in electrical construction but was rather a program designed to give fifty percent of the business to an owner contractor who is black and whose qualifications to even bid were never passed upon. The past performance of plaintiff Continental in the area was measurable and determinable and as regards affirmative action programs, no electrical contractor had any better record. Continental had never even been charged with being guilty of an unfair employment practice and its affirmative action programs had specifically been approved by the State of Indiana and by the Federal Government. Continental's performance for the defendants, measured by 25 past jobs for the defendants, had proven satisfactory in all respects and the agents, representatives and architects of the defendants charged with the responsibility of making business and financial recommendations recommended that the contract be awarded to Continental. All contracts let by the defendants since the year 1962 had contained a provision substantially identical in substance to that contained in Section 3.3 of the specifications involved herein and Continental had performed work under contracts it had received in complete accordance and compliance with such specifications including the matters contained in Section 3.3 of the specifications. The prior policy and practice of the board of trustees in awarding contracts had been to rely upon the recommendations of the specialized personnel who could evaluate all of the qualifications of the various bidders and never before had the defendant School City awarded the contract to other than the lowest bidder when the persons charged with the responsibility of making recommendations had unanimously recommended that the contract be awarded to such bidder. In awarding the contract to Gibson, the defendants not only grossly abused their discretion and acted arbitrarily and capriciously but they breached their legal and equitable duty as well. Favoritism occurred. Additionally, when one examines the uncontradicted facts and the dates involved, it is clearly seen that the secret bids were publicly opened and read on July 14, 1970, and Gibson then knew that it was not the lowest bidder. Yet, six days later, on July 20, 1970, it wrote Solar-Ray Electric Company (the Negro Entrepreneur) advising Solar-Ray that if Gibson received the award it was Gibson's 'intent' to enter into a joint venture with Solar-Ray on an equal participation basis. And, two days later, on July 22, 1970, the Gary Urban League wrote the president of the School Board suggesting that the School Board give all due consideration

to bids on school construction work which are submitted by qualified minority contractors with the letter specifically mentioning Solar-Ray and the Solar-Ray Company only. Then, on July 30, 1970, the defendants caused a letter to be sent to the bidders asking them for their affirmative action plans. Significantly, both Gibson's and the Urban League's letters came not only after the public reading of the amount of the bids but came before defendant trustee's request for the bidders to submit their affirmative action plans. And the admitted primary consideration of the defendants in awarding the contract to Gibson was their reliance upon the said two letters relating to Solar-Ray. This in the opinion of the court constitutes, at a minimum, constructive fraud and smacks of collusion.

The court specifically notes, however, that in reaching the decision herein it does not rely, in any respect, upon its belief that constructive fraud and possible collusion were engaged in. This court has already found favoritism as well as the fact that the defendants exceeded the scope of their authority, or in the alternative, if they possessed any discretion, grossly abused such discretion and exercised it in an arbitrary and capricious fashion. For the protection of the taxpayers and bidders in the awarding of public contracts in the future, the court feels constrained to point out the foregoing and while it does not base its decision upon collusion and constructive fraud, it is clear and the court concludes that the action of the defendants invites collusion and fraud thus thwarting free and open competitive bidding, all of which is in derogation of the public policy of this state and results in higher costs to the taxpayers. The decision of the defendants to award the contract to Gibson was not based upon fact but was contrary to fact. The action of the defendant trustees in awarding the contract for the electrical construction work to Gibson Electric Company of Indiana, Inc., was illegal and void."

The trial court found favoritism in the school's awarding of the electrical contract, which is constructive fraud. *Haywood Publishing Co.* v. *West, supra.* While it was not unequivocal in finding collusion or in the effect it would give to its findings of constructive fraud, we agree that the latter is clearly disclosed by the evidence. Constructive fraud in the awarding of public contracts has been defined in *Budd* v. *Bd. of Comrs. of St. Joseph Co., supra,* as:

". . . a breach of legal or equitable duty which, irrespective of the moral guilt of the fraud feasor, the law declares fraudulent because of its tendency to deceive others, to violate public or private confidence, or to injure public interests. . . . Such a situation may arise when the conduct under inquiry is so manifestly wrong and prejudicial to the public interest as to create a conviction that it was the result of fraud and a plain disregard of public duty."

Particularly pertinent to the situation before us is the statement by our Supreme Court in *Beecher* v. *City of Terre Haute, et al.* (1956), 235 Ind. 180, 184-185, 132 N. E. 2d 141:

" 'Constructive fraud is fraud which arises by operation of law, "from acts of (a) course of conduct which, if sanctioned by law, would either in the particular case, or in common experience, secure an unconscionable advantage, irrespective of the existence or evidence of actual intent to defraud." *Leader Publishing Co. et al.* v. *Grant Trust and Savings Co., Trustee* (1914), 182 Ind. 651, 660, 108 N. E. 121. *Ballard* v. *Drake's Estate* (1937), 103 Ind. App. 143, 148, 5 N. E. 2d 671. Fraud, however, may exist without any intention to "do a wrong" as the law itself may, under certain conditions, declare a thing to be fraudulent without a real intention to commit fraud having been found. This is known as constructive fraud, or fraud in law, and may consist of any breach of duty, which, if not relieved against, would operate as a fraud.' "

The importance of an affirmative action program cannot be denied. The downward-spiraling cycles of poverty can only be broken by drawing the deprived population, largely composed of unskilled members of minority groups, into the economic mainstream. Yet the evaluation of affirmative action programs cannot become the *sole* determinant of a "lowest and best" bid for public construction work.

The actions of the School Board not only destroyed the safeguarding basis of competitive bidding, but also has deprived the school children of Gary of adequate educational facilities during the pendency of this case. The confidence of the public, and of contractors with public agencies who

depend for their livelihood upon compliance with the legal requirements of competitive bidding, also may have well been jeopardized as a result. Moreover, the School Board has breached its duty to secure the best possible performance at the lowest price.

In the final analysis, Continental was without question not only the lowest but as well the best bidder within the appropriate guidelines established by laws regulating the award of public contracts. It should have been awarded the contract. The trial court's conclusion of law that the School Board abused its discretion by awarding the contract to Gibson was therefore proper.

The fact that the trial court, for unknown reasons, chose not to premise its decision upon the existence of constructive fraud does not alter the legal effect of such finding, which finding was, in our view, supported by the evidence.

The fact of constructive fraud was sufficiently established, and constitutes valid foundation for the judgment below. *Citizens Loan, etc., Co.* v. *Herron* (1917), 186 Ind. 421, 115 N. E. 941.

The school further asserts that they have the authority to change the specifications during the bidding process and cite for this proposition the case of *Gariup* v. *Stern* (1970), 254 Ind. 563, 261 N. E. 2d 578. That case is distinguishable on the facts in that the changes in specifications took place prior to the opening of the bids and not subsequent to the opening, as in the case at hand.

One of the more important procedural questions raised by the appellant, is whether or not the Court erred in proceeding with the trial after granting, then vacating, a change of venue from the county. More specifically stated: Did the order of the 25th of September, 1970, constitute a setting for trial, as contemplated by TR. 76 (7), which states:

"(7) Provided further, a party shall be deemed to have waived a request for a change of judge or county if a cause is set for trial before the expiration of the date within which

a party may ask for a change, evidenced by an order book entry and no objection is made thereto by a party as soon as such party learns of the setting for trial. Such objections, however, must be made promptly and entered of record, accompanied with a motion for a change from the judge or county (as the case may be) and filed with the court."

The order of September 25th, 1970, omitting formal parts, reads:

"IT IS HEREBY ORDERED, ADJUDGED AND DE-CREED:

1. The Temporary Restraining Order against the Defendants in the above entitled cause heretofore entered by this Court at 11:30 A.M. on September 22, 1970, is hereby extended, with the consent of the Defendants, to and including 5:00 P.M., October 30, 1970, and for such additional period of time as a plenary hearing is had upon the verified complaint heretofore filed herein by the Plaintiff and this Court has issued a decision relative to the same.

2. The Defendants are directed to file and serve their answer on or before October 15, 1970.

3. The hearing on the verified complaint requesting a Preliminary Injunction and other relief is set for this Court for October 27, 1970, at 10:00 A.M."

Immediately following the date and judge's signature was the agreement and consent, signed by the attorney of record for both sides. The order and consent reflected conversation of counsel and the court as set out in the record.[3]

After a change of attorneys for the school, a motion for a change of venue was made and granted to the school on October 9, 1970. Continental then filed, on October 19, 1970, a motion to vacate the change of venue based upon the above quoted TR. 76 (7). The court sustained the motion to vacate.

---

3. "THE COURT: The preliminary injunction hearing evidence can be the same evidence in the permanent injunction hearing if it goes that far; I don't know. If you can agree and stipulate, the preliminary and permanent could be heard at the same time, and dispose all in one trial.

MR. COHEN: I think that is the intent of counsel, Your Honor, that we submit the entire case in chief on that day.

MR. GRANACK: Hopefully, that is what we intend."

"Setting a case for trial is an entry or order made in the cause by the court, either of its own motion, in regulating its business in compliance with the statute, or the rules of court made conformably therewith, or by agreement of parties, by which a day certain is fixed, on or after which the case may be called for final disposition or trial." *Moore* v. *Sargent* (1887), 14 N. E. 2d 466, 468, 112 Ind. 484, 488.

The order of the 25th of September, when read in its entire context, clearly indicates the intent of the court to try all aspects of the case as prayed for in the plaintiff's complaint, as well as conforming in both respects to the statement of the *Moore* case, *supra*. The school is bound by the waiver of prior counsel of not asking for a change of venue. The motion for change of venue was improperly granted in the first instance. The vacating of such ruling was therefore appropriate.

The school's next assigned error complains of the court's refusal to dissolve the temporary restraining order. The burden placed upon the plaintiff as to whether or not a temporary injunction shall issue is:

"In our determination of whether or not the trial court committed any error in granting the temporary injunction in this case, the appellee (the plaintiff below) need only show a prima facie case for an injunction and that injury to him would be certain and irreparable if the application be denied and that injury to the defendant below if the temporary injunction be granted, may be adequately indemnified by bond. It is not necessary that a case should be made that would entitle the plaintiff to relief in all events. It is necessary only that the pleadings and evidence be such that it makes out a case for a proper investigation in equity and that the status quo be maintained pending such trial on the merits. There must be a clear abuse of discretion by the trial court before the court on appeal may interfere." *The Ind. Annual Conf. Corp. et al.* v. *Lemon, etc.* (1956), 235 Ind. 163, 167, 131 N. E. 2d 780, 782.

While others may have handled this matter differently, or reached a different conclusion, we cannot say, as a matter of law, that the record discloses a clear abuse of discretion by the trial court as required by the above quoted case.

Still another allegation of error assigned by the school is the admission into evidence of two documents which were not included in the pre-trial order. One was the affirmative action plan of Gibson as submitted to the school. The other was a letter from Gibson to Solar-Ray (the Negro entrepreneur) expressing an intent to form a joint venture on the Pulaski school project. Pursuant to TR. 61, the admission of these documents amounts, at most, to harmless error on the part of the trial court. They are not of such character that their admission results in substantial injustice to the school.

. The school further states that the trial court erred in not granting their motion for summary judgment, their motion for an involuntary dismissal, and their motion for judgment on the pleadings, pre-trial order, and the opening statement of Continental's attorney. This court cannot agree with any of these contentions for the record is replete with questions of law and fact that required a full trial by the court to resolve.

The school's assignment of errors contained 50 specifications, one of which has been waived. Their brief addresses argument to a grouping of 16 contested errors and this opinion finds none to be reversible error.

The judgment of the trial court is affirmed.

Sullivan, P.J., Buchanan and Lowdermilk, JJ., concur.

NOTE.—Reported in 273 N. E. 2d 293.