GULF OIL CORPORATION, ATLANTIC RICHFIELD COMPANY, SHELL OIL COMPANY AND EXXON CORPORATION *v.* FRANK MC-MANUS, ON BEHALF OF HIMSELF AND ALL OTHER PURCHASERS OF PETROLEUM PRODUCTS WITHIN THE STATE OF INDIANA, AMOCO OIL COMPANY, STANDARD OIL COMPANY (INDIANA), TEXACO, INC. AND MOBIL OIL CORPORATION.

[No. 3-874A140. Filed May 23, 1977.]

*Joseph A. Roper, Chapleau, Roper, McInerny, Minczeski & Farabaugh,* of South Bend, for appellant Gulf Oil; *Glen J. Tabor, Blachly, Tabor, Bozik, & Hartman,* of Valparaiso, for appellant Atlantic Richfield; *Herbert K. Douglas, Douglas, Douglas & Douglas,* of Valparaiso, for appellant Shell Oil; *James H. Pankow, Jones, Obenchain, Johnson, Ford, Pankow & Link,* of South Bend, for appellant Exxon Corp.

*William G. Conover,* of Valparaiso, *Philip M. Cagen,* of Valparaiso, for appellee McManus; *John E. Bailey,* of counsel,

of Houston Texas; *William F. McInerny,* of South Bend; *Otis Pratt Pearsall, John A. Donovan, Philip H. Curtis, Hughes, Hubbard & Reed,* of counsel, of New York, New York; *Donald A. Bright, Gary M. Caylor,* of counsel, of Los Angeles, California; *William Simon, William R. O'Brien, Howrey, Simon, Baker & Murchison,* of counsel, of Washington, D.C., *John H. Chiles,* of counsel, of Houston Texas; *Arthur A. May, Crumpacker, May, Levy & Searer,* of South Bend, for appellee Standard Oil of Indiana; *Charles T. Clifford, Chester Clifford, Hoeppner & Houran,* of Valparaiso, *William R. Syle,* of New York, New York, for appellee Texaco, Inc.; *James V. Donadio, James E. Hawes, Jr., Ice Miller Donadio & Ryan,* of Indianapolis, *Charles F. Rice,* of New York, New York, *Patrick J. Dougherty,* of Valparaiso, for appellee Mobil Oil Corp.

GARRARD, J.—This case concerns the operation of our trial rules relating to change of venue. Appellee McManus commenced suit as a purported class action against the oil companies. On May 14, 1974, pursuant to Indiana Rules of Procedure, Trial Rule 23(C)(1), the court set a class action determination hearing for June 13.[1] On June 6, after being denied a continuance, McManus moved for a change of venue. The court forthwith granted the change and named the four adjoining counties required for striking. McManus then struck the name of one county. On June 13 the defendants moved to vacate the order granting the change and asked that the clerk be stayed from transferring the case until its motion to vacate could be heard. The court granted the stay and, reserving the quetsion presented by the motion to vacate, the defendants then struck the name of one of the three remaining counties. On June 19, McManus completed the striking process. On June 21, the oil companies filed an additional motion asserting that McManus was not entitled to a change of venue because he failed to complete the striking

---

[1]. None of the defendants had filed responsive pleadings. The order extended the time for such filings until after determination of the class action question.

process within the time permitted by TR. 76(9). On July 31, the court denied the motion to vacate. Thereafter the appellant oil companies perfected this interlocutory appeal pursuant to AP. 4(B)(5).

Rule TR. 76(7) provides that although a party may generally seek a change of venue at any time before the expiration of ten (10) days after the issues are first closed on the merits,

". . . [A] party shall be deemed to have waived a request for a change of judge or county if a cause is set for trial before the expiration of the date within which a party may ask for a change, evidenced by an order book entry and no objection is made thereto by a party as soon as such party learns of the setting for trial. Such objection, however, must be made promptly and entered of record, accompanied with a motion for a change from the judge or county (as the case may be) and filed with the court."

When found applicable this subdivision has been strictly enforced. *State ex rel. Hepler* v. *Sup. Ct. of Marion Co.* (1975), 263 Ind. 196, 328 N.E.2d 218; *State ex rel. Krochta* v. *Sup. Ct. of Lake Co.* (1974), 262 Ind. 257, 314 N.E.2d 740.

In the present case it is undisputed that McManus knew of the setting made on May 14 and permitted more than three weeks to elapse without making objection. Furthermore, there has been no suggestion that grounds for the change were only discovered later. *See,* TR. 76(8). Thus, the pivotal question for application of TR. 76(7) is whether the hearing which was set to determine the class action status of the case should be deemed a "trial" sufficient to invoke the waiver provision of TR. 76(7).

The general connotation of "trial" is an adjudication upon the factual merits of a claim. *See, City of Ft. Wayne* v. *State ex rel. Hoagland* (1976), 168 Ind. App. 262, 342 N.E.2d 865. However, in transposing that concept into our inquiry it must be borne in mind that a final adjudication need not necessarily dispose of all issues

as to all parties. It is sufficient if it disposes of "a distinct and definite branch" of the litigation. *Guthrie* v. *Blakely* (1955), 234 Ind. 167, 125 N.E.2d 437; *Bozovichar* v. *State* (1952), 230 Ind. 358, 103 N.E.2d 680.

The language of TR. 76(7) was adopted verbatim from our prior Supreme Court Rule 1-12(B) without interpretive comment by the Civil Code Study Commission. It does not appear that Court Notes issued respecting prior amendments of the rule attempted to define "trial."[2]

The purposes of the rule, considered in its entirety, are twofold. The primary purpose is to further guarantee fairness and impartiality in the administration of the law by affording all parties the absolute right to have their case heard by a different judge or in a different county than that one secured through operation of the primary venue requirements upon commencing an action. While this approach has been sometimes criticized as out of step with the times, the same thing can be said for much of the democratic process of checks and balances. They often impede "efficiency." They are nevertheless our principal bulwark against the evils which occur when the ends are permitted to justify, and then dictate, the means. We believe that the check and balance provided by the rule and the confidence it may promote in a party litigant in the fairness of our system of law are worthwhile. Recognizing the practical difficulties which inhere in requiring a litigant to allege and establish actual bias and prejudice, we further favor our rule's provision dispensing with any such requirement at the time the litigation is initiated. Making exercise of the right merely a matter of choice does much to insure its genuine effectiveness. It does even more for public confidence since it counters the fear of disguised prejudice.

On the other hand, we recognize that in operation, utilizaiton of the right must have limitations or it can become a

---

2. The language was originally adopted in the 1964 amendment which substantially revised the rule and first utilized the format of the subsections.

weapon to frustrate and delay, rather than to secure, justice. To meet these considerations the rule imposes time limits within which a change may be properly requested. These limitations are to preclude the burdens occasioned by the delay required to perfect a change. They apply once the case has proceeded to the point where it may be said that the policy favoring choice of forum no longer outweighs the policy favoring judicial efficiency. The very absence of a requirement of any "grounds" needed to procure a change justifies both strict interpretation and an abbreviated time within which the choice may be made.

Thus, in considering both policy considerations reflected in our rule while dealing with another subsection, the Supreme Court stated in *State ex rel. Yockey* v. *Sup. Ct. of Marion Co.* (1974), 261 Ind. 504, 506, 307 N.E.2d 70, 71-2,

> "An examination of TR. 76 reveals competing policy considerations. First, the rule is intended to guarantee a fair and impartial trial by making the automatic change of venue available. Second, the rule is designed to avoid protracted litigation by imposing a time limit after which a change of venue motion shall be denied. . . . In weighing the competing considerations, we *shall not* endorse an interpretation of TR. 76 which sanctions dilatory tactics." (emphasis added)

How do these considerations apply when a case is set for hearing on the class action determination to be made under TR. 23(C) (1) ? While such a hearing is not a trial in the general sense of a judicial determination of the facts and the ultimate claim for recovery, it is the only "trial" to be had of this issue.

The determination to be made has more than mere procedural consequence. In many instances the cost, difficulty, and complicated nature of the litigation, when compared to the potential recovery available for any individual, or manageable group of individual plaintiffs, is so out of proportion as to effectively preclude reaching any vindication of right or redress of wrong unless the action can be pursued under

TR. 23. This has been recognized by the United States Supreme Court in the *Eisen* cases. There the Court held under the "collateral order doctrine" that, at least where there are no viable individual plaintiffs, the determination may represent a collateral question which is not "merely a step toward final disposition on the merits" and is appealable as a *final* judgment.[3] *See, Eisen* v. *Carlisle & Jacquelin* (1974), 417 U.S. 156, 94 S.Ct. 2140, 40 L.Ed.2d 732.

This same concept of a collateral determination which disposes of a distinct branch of the litigation has been utilized by our Supreme Court in applying the language contained in TR. 76(7). Indiana proceedings to secure appointment of a receiver do not constitute an independent action. They are merely collateral to the main action.[4] Yet in *State ex rel. Victory Lanes, Inc.* v. *Blackford Cir. Ct.* (1967), 249 Ind. 178, 231 N.E.2d 140, our Supreme Court held that a hearing on the appointment of a receiver was a trial within the meaning of the change of venue rule.

This court's holding in *City of Ft. Wayne* v. *State ex rel. Hoagland, supra,* should be distinguished. Such hearings represent merely a step toward final disposition on the merits.[5]

---

3. As to the appealability, this may reflect a more liberal policy regarding the finality of judgments in the federal system.

". . . [T]his Court has held that the requirement of finality be given a *'practical rather than a technical construction.'* * * * [I]n deciding the question of finality the most important competing considerations are 'the inconvenience and costs of piecemeal review on the one hand and the danger of denying justice by delay on the other.' " (emphasis in original) *Eisen* I (2nd Cir. 1966), 370 F.2d 119, 120, *cert. den.* 386 U.S. 1035, 87 S.Ct. 1487, quoting Justice Black in *Gillespie* v. *U.S. Steel Corp.* (1964), 379 U.S. 148, 152, 85 S.Ct. 308, *Compare, Anthrop* v. *Tippecanoe Sch. Corp.* (1972), 257 Ind. 578, 277 N.E.2d 169.

4. *See,* IC 1971, 34-1-12-1.

5. Hearings involving injunctions have been held to constitute a "trial" within the meaning of TR. 76(7) where a hearing was set to consider the "verified complaint requesting preliminary injunction *and other relief." School City of Gary* v. *Continental Electric Co.* (1971), 149 Ind. App. 416, 273 N.E.2d 293, and where the "cause on the counter complaint" was assigned for trial even though the trial court, after the hearing, granted only a preliminary injunction. *Grothe* v. *Herschbach* (1972), 153 Ind. App. 224, 286 N.E.2d 868.

We believe the hearing and determination provided under TR. 23 (C) (1) results in a collateral order which disposes of a distinct branch of the litigation. As such, the case is controlled by *Victory Lanes, Inc., supra,* and the policy statement in *Yockey, supra.*

Accordingly, pursuant to TR. 76 (7) McManus waived his right to a change when he failed to object or request the change for more than three weeks after he learned of the hearing which was set and evidenced by order book entry on May 14. The court therefore erred in granting the change and in denying the motion to vacate. Since the error not only requires reversal but moots the claimed subsequent errors, we need not discuss the other assignments raised by appellants.

Reversed and remanded for further proceedings in accordance herewith.

Hoffman, J., concurs; Staton, P.J., dissents and files separate opinion.

### DISSENTING OPINION

STATON, P.J.—I dissent. The trial court's judgment should be affirmed, since a determination by the trial court under Ind. Rules of Procedure, Trial Rule 23 (C) (1) does not touch upon the merits of any issue contemplated by TR. 76 (7). TR. 23 (C) (1) provides:

> "As soon as practicable after the commencement of an action brought as a class action, the court, upon hearing or waiver of hearing, shall determine by order whether it is to be so maintained. An order under this subdivision may be conditional, and may be altered or amended before the decision on the merits."

This determination by the trial court is neither final in nature nor a determination of the merits on the claim as contemplated by TR. 76 (7). The preliminary action contemplated by the trial court under TR. 23 (C) (1) is less than the preliminary action contemplated by the trial court under *City of Fort Wayne* v. *State ex rel. Hoagland* (1976), 168 Ind. 262,

342 N.E.2d 865 where a preliminary injunction was held not to be a trial. The Rule, 23(C)(1), by its own terms denies any finality on the merits.

I would affirm the judgment of the trial court.

NOTE.—Reported at 363 N.E.2d 223.