James MARTIN, Mary Roman, Henry Cornelius, and Robert O'Drobinak, Individually and on behalf of all others similarly situated, Appellants–Plaintiffs,

v.

AMOCO OIL COMPANY, Appellee/Cross-Appellant Defendant.

Joseph and Dorthea ZRNCHIK, et. al, Appellants/Intervenors,

v.

AMOCO OIL COMPANY, Appellee/Defendant.

No. 56A03–9409–CV–333.

Court of Appeals of Indiana.

April 3, 1997.

Rehearing Denied July 10, 1997.

Saul I. Ruman, David W. Holub, David M. Hamacher, Ruman, Clements, Tobin & Holub, P.C., Hammond, John W. Barce, Barce & Ryan, Kentland, Richard P. Komyatte, Komyatte & Freeland, Highland, Larry G. Evans, William F. Satterlee, III, F. Joseph Jaskowiak, Jack A. Kramer, Hoeppner, Wagner & Evans, Valparaiso, Patrick J. McManama, Patrick J. McManama, P.C., Crown Point, for Appellants.

Thomas F. Ryan, Timothy E. Kapshandy, Brandon D. Lawniczak, Sidley & Austin, Chicago, IL, James J. Neath, Amoco Oil Company, Chicago, IL, Fred R. Biesecker, Ice Miller Donadio & Ryan, Indianapolis, for Appellee.

GARRARD, Judge.

James Martin, et. al. (collectively "Class Plaintiffs"), Amoco Oil Company ("Amoco"), and Joseph and Dorthea Zrnchik, et. al. (collectively "Intervenors")[1] appeal various facets of a class action involving the alleged underground migration of oil from Amoco's Whiting, Indiana refinery to Class Plaintiffs' and Intervenors' property.

Reversed and remanded in part, and affirmed in part.

## FACTS

This bitterly contested and often vexatious appeal began its journey to this court on February 1, 1991, when Robert O'Drobinak and Eugene Burkat[2] filed suit against Amoco in Hammond, Indiana on behalf of themselves and the 500 residents of Whiting,

---

1. We refer to these parties as Intervenors solely for the sake of convenience. They originally became part of this class action as unnamed class plaintiffs and intervened only after the jury verdict for purposes of filing a motion to correct error and pursue the present appeal. Because their status during the various stages of the litigation is in question, we use the term "Intervenors" only as a collective name for the group and do not imply that they officially intervened to become part of the suit.

2. Mr. O'Drobinak was subsequently joined as a class representative by James Martin and Mary Roman, while Mr. Burkat dropped out of the suit on June 24, 1993.

Indiana who had received notice from Amoco of the possible underground migration of oil onto their properties. The complaint, as finally amended, alleged negligence, negligence per se, nuisance, strict liability, negligent/intentional infliction of emotional distress, and intentional trespass on the part of Amoco.

On April 24, 1991, Amoco moved for an automatic change of venue from Hammond pursuant to then Ind.Trial Rule 76. After both parties struck a proffered county, the cause was venued to the Newton County Circuit Court. Shortly thereafter, on June 10, 1991, Judge Marvin McLaughlin was appointed special judge. Judge McLaughlin immediately assumed control of the case, but did not file an appearance and qualification as special judge.

The next significant event did not occur until January 23, 1992, when Class Plaintiffs and Amoco both filed motions to certify the class as a mandatory class under Ind.Trial Rule 23(B)(1). A telephone conference between Class Plaintiffs, Amoco, and Judge McLaughlin was held and the order certifying the class as a T.R. 23(B)(1) mandatory class was entered the same day the motions were made. It is worth note that, as was characteristic of the entire three year life of this suit, the interims between events of major importance were filled with multiple minor motions by the parties to which the trial court was forced to respond.[3]

On January 31, 1992, eight days after the class certification order, attorney Richard Komyatte entered his appearance on behalf of a group of individuals (the Intervenors) who were then pursuing a separate suit against Amoco in federal court based on the same alleged oil migration.[4] On February 3, 1992, Intervenors filed a motion to vacate the class certification order and to revoke the appointment of Judge McLaughlin for failing to properly appear and qualify under Ind.Trial Rule 79. Judge McLaughlin subsequently denied both motions. The Intervenors repeatedly filed motions to vacate the certification order and revoke Judge McLaughlin's appointment. These motions were continuously denied until Judge McLaughlin ordered the Intervenors, on the motion of Amoco, to refrain from filing repetitive motions on the matter. On March 25, 1992, the Intervenors filed a praecipe, ostensibly to appeal the class certification order, but did not file the record with this court or pursue the appeal in any manner.

Between March and June of 1992, the parties, now including the Intervenors, continued disputing the limits and process of discovery, many of the disputes involving discovery of unnamed class members. Eventually Class Plaintiffs agreed, though reluctantly, to draft and send a questionnaire to the unnamed class members about their individual claims and damages. The questionnaire explicitly stated that failure to answer the questionnaire and return it to the class representatives would jeopardize the unnamed members' ability to participate in the suit and possibly preclude them from making any claims against Amoco. On June 24, 1992, the trial court, upon the motion of Amoco, issued an order setting a deadline for the return of the questionnaires and ordering that any unnamed member who did not respond before this deadline would be dismissed from the suit. The deadline was repeatedly extended by the trial court, but eventually approximately 301 of the 500 class members were dismissed from the suit.

After almost two years as special judge, Judge McLaughlin recused himself on April 26, 1993, and Judge Robert Smart was appointed as special judge. One day later, on April 27, 1993, Judge Smart filed his appearance and qualification as special judge. None of the parties challenged Judge Smart's appointment or appearance at that time, or now on appeal.

On June 2, 1993, Henry Cornelius, a former member of the Intervenors, was named a class representative. At this time, attorney Komyatte along with the Intervenors joined Class Plaintiffs in the prosecution of

---

3. To put in context the amount of material the trial court was forced to consider, we point out that the record on appeal consists of 16,321 pages in 74 volumes packaged in 14 boxes.

4. Intervenors' federal suit is currently stayed pending the outcome of the present appeal.

this suit.[5] The last challenged discovery order was filed on June 24, 1993. This order required independent medical examinations ("IMEs") for all class members who were to testify about physical discomfort and ailments allegedly caused by the underground oil. Most class members who were to testify eventually submitted to the IMEs, but it appears from the record that some witnesses were prevented from testifying about any physical discomfort because they had not submitted to the examinations.

Opening statements by Class Plaintiffs began on October 7, 1993. On October 8, 1993, the trial court granted Amoco's motion in limine excluding any reference to Class Plaintiffs' fear or anxiety caused by fires or explosions at the Whiting refinery. Class Plaintiffs objected to this order in a timely manner, thus preserving the issue for appeal. The trial continued for the next seven weeks until the jury began deliberating on November 22, 1993. On that day, while the jury was still deliberating, Class Plaintiffs renewed their motion to vacate the class certification order and revoke the appointment of Judge McLaughlin. The next day Judge Smart denied both the motion to vacate the class certification order and the motion to revoke the appointment of Judge McLaughlin. On November 29, 1993, the jury returned a verdict of not liable on all counts. Judge Smart entered final judgment on this verdict on December 14, 1993.

On December 30, 1993, the Intervenors, no longer acting as part of the class, filed a motion to intervene for the purpose of filing a motion to correct error. Judge Smart granted this motion to intervene on January 13, 1994. Both the Intervenors and the Class Plaintiffs then filed their individual motions to correct error on January 13, 1994. Over the next eight months, the trial court heard arguments by the parties and responded to a series of accusations and motions filed by and against all three parties. On August 1, 1994, Judge Smart entered his order on the various motions to correct error. This order granted judgment on the evidence

on the intentional trespass claim against Amoco. Judge Smart then proceeded to hold that the class representatives had failed to prove any compensatory damages and awarded each of the named class representatives nominal damages in the amount of one dollar. In all other respects, Judge Smart affirmed the verdict of the jury.

All three parties appeal this decision. Further facts will be provided where necessary.

## ISSUES

Class Plaintiffs, Intervenors, and Amoco present several issues for review which we consolidate and restate as follows.

Intervenors present four issues on appeal which we restate and consolidate as:

1. Whether the trial court erred by certifying the class as a mandatory class under T.R. 23(B)(1).

2. Whether Judge McLaughlin's appointment as special judge was revoked for failure to comply with T.R. 79.

3. Whether the automatic change of venue from Lake County to Newton county served as a wholesale peremptory challenge of any African–American juror, thus violating the Equal Protection Clause.

Amoco presents one issue on appeal.

1. Whether the trial court erred by holding Amoco liable for intentional trespass despite the jury's verdict.

Class Plaintiffs present six issues on appeal which we consolidate and restate as:

1. Whether the trial court erred by failing to find Amoco liable on the nuisance claim.

2. Whether the trial court erred by dismissing 301 unnamed class members for failing to respond to a discovery questionnaire.

3. Whether the trial court erred by excluding evidence of the class members'

---

**5.** For the sake of convenience, we will refer to the joined group of the Class Plaintiffs and Intervenors during the trial as the Class Plaintiffs. We note that the Intervenors reasserted their separate identity when they petitioned to intervene after the verdict to pursue a separate motion to correct error.

fear and anxiety, and evidence of fires and explosions at the Amoco refinery.

4. Whether the trial court erred by ordering independent medical examinations of unnamed class members and by precluding the testimony of those who did not submit to these examinations.

## DISCUSSION

## I. INTERVENORS' CLAIMS

### A. CHALLENGES TO THE CLASS CERTIFICATION

Intervenors first claim that the trial court erred when it certified the class as a mandatory class action under T.R. 23(B)(1) for two reasons. First, they argue that the court erred because the class action did not meet the requirements of T.R. 23(B)(1) and, secondly, the court violated Intervenors' due process rights by failing to provide them notice of the class certification hearing and failing to hold a hearing on the certification of the class. Both claims challenge, though in different ways, the validity of the mandatory class. Amoco makes two arguments as well, arguing that the class was properly certified as a T.R. 23(B)(1) mandatory class, and that the Intervenors waived this issue because class certification determinations are final and appealable interlocutory orders that must be appealed at the time of the order. We agree that the Intervenors have waived any challenge to the class certification, but for a different reason.

We decline to ground our holding on the sole premise that class certification orders are final and appealable interlocutory orders, because it is not clear after our supreme court's decision in *Berry v. Huffman*, 643 N.E.2d 327 (Ind.1994) whether class certification orders are final and appealable orders at the present time. Amoco relies on *American Cyanamid Co. v. Stephen*, 600 N.E.2d 1387 (Ind.Ct.App.1992), *trans. denied*, for the proposition that certification orders are final and appealable orders. *American Cyanam-*

*id*, in stating that certification orders are final and appealable, relied on this court's opinion in *Gulf Oil Corp. v. McManus*, 173 Ind.App. 147, 363 N.E.2d 223 (1977). In *Gulf Oil*, we held that class certification orders were final and appealable because they disposed of a distinct and definite branch of the litigation. *Id.* 363 N.E.2d at 227. Cases following *Gulf Oil*,[6] including *American Cyanamid*, all followed the same reasoning: certification orders are final and appealable because they dispose of a distinct and definite branch of the litigation.

In *Berry*, our supreme court explicitly held that the definite and distinct branch doctrine had been superseded and that interlocutory orders were final only when expressly certified as final and appealable by the trial judge. *Berry*, 643 N.E.2d at 329. While *Berry* did not involve a class certification order, its broad abrogation of the distinct branch doctrine undercuts the original rationale for deeming it a final order. *CSX Transp., Inc. v. Clark*, 646 N.E.2d 1003 (Ind. Ct.App.1995), written after *Berry*, dealt with an interlocutory appeal from a conditional class certification without even discussing the propriety of the appeal in light of *Berry*. Though we agree with the reasoning in *Gulf Oil* that class certification hearings and orders are the only "trial" to be had on the issue of class certification and therefore should be final and appealable, we are constrained by *Berry* from simply so holding. Notwithstanding this, we hold that the Intervenors have clearly waived these challenges to the class certification.

Waiver is the " 'intentional relinquishment or abandonment of a known right or privilege.' " *State v. Owings*, 622 N.E.2d 948, 952 (Ind.1993)(quoting *Phillips v. State*, 543 N.E.2d 646, 648 (Ind.Ct.App.1989)). A party may waive a right by word or deed. *Id.* A party may also waive a constitutional right. *Marshall v. State*, 254 Ind. 156, 258 N.E.2d 628, 631 (1970), *reh'g denied*. "Due process rights are subject to waiver." *Town of Speedway v. Harris*, 169 Ind.App. 100, 346

---

**6.** *Koors v. Great Southwest Fire Ins. Co.*, 530 N.E.2d 780 (Ind.Ct.App.1988), *reh'g denied; CSX Transp., Inc. v. Rabold*, 593 N.E.2d 1277 (Ind.Ct. App.1992), *trans. denied; CSX Transp., Inc. v.*

*Clark*, 646 N.E.2d 1003 (Ind.Ct.App.1995); *Con-Agra v. Farrington*, 635 N.E.2d 1137 (Ind.Ct.App. 1994), *reh'g denied*.

N.E.2d 646, 653 (1976). A waiver of a constitutional right, such as Intervenors' due process claim, must be voluntarily, intelligently, and knowingly made. *Id.*

■ At the time of the class certification order on January 23, 1992, class certification orders were clearly final and appealable interlocutory orders. *See American Cyanamid Co. v. Stephen,* 600 N.E.2d 1387 (Ind.Ct. App.1992), *trans. denied.* Intervenors knew that they were required to immediately appeal the order, as reflected by the praecipe they filed on March 25, 1992. They forewent their right to appeal this issue by then failing to file the record or further pursue their appeal at that time. Following this, the Intervenors fully participated in the trial, joining the Class Plaintiffs,[7] with their attorney serving as cocounsel. Intervenors now attempt to rely on the fortuitous decision in *Berry* to gain a second chance to appeal this issue. *Berry* was handed down on November 30, 1994, after the present appeal had been commenced and more than two years after the class certification. We need not allow Intervenors a second chance at an issue that they had previously declined to pursue. By declining to exercise their known right to immediately appeal the class certification and electing to fully participate in the proceedings, the Intervenors waived any objections to the certification of the class. We, therefore, hold that Intervenors' challenge to the propriety of the class and their due process challenge of the class were waived.

## B. CHALLENGE OF JUDGE McLAUGHLIN

■ Intervenors claim that Special Judge McLaughlin did not appear and qualify as required by Ind.Trial Rule 79(5) and therefore his actions, specifically the class certification, are void. T.R. 79(5) required that a special judge appear and qualify within twenty days of his or her appointment. Judge McLaughlin was appointed on June 10, 1991,

but nowhere in the record or the chronological case summary does Judge McLaughlin appear and qualify as the special judge. It is clear that immediately after his appointment, Judge McLaughlin assumed control of this suit and acted as the special judge.[8] While it is true that Intervenors promptly objected to the Judge's appointment upon being brought into the suit by the class certification, their claim is merely a different attempt to once again challenge the class certification. We say this because class certification is the only ruling they challenge, and because, unlike the situation in *Taylor v. State,* 507 N.E.2d 978 (Ind.1987), Judge McLaughlin was succeeded by an admittedly qualified judge who tried the case.

As noted above, waiver is the intentional relinquishment of a known right. *State v. Owings,* 622 N.E.2d 948, 952 (Ind.1993). The only harm that Intervenors claim is the certification of the class. Intervenors participated fully in the trial, presided over by the duly appointed and qualified Judge Smart, and presented the same evidence and witnesses that would have been presented regardless of Judge McLaughlin's failure to qualify. Moreover, at the end of the trial, Intervenors renewed their objection to Judge McLaughlin's appointment before Special Judge Smart. After reviewing the matter, Judge Smart denied their motion. Intervenors do not appeal this decision, making it clear that the true aim of this challenge is the class certification.

By participating fully in the trial and renewing their objection before Judge Smart, Intervenors waived their right to again attack the class certification through the technical challenge to Judge McLaughlin's appointment.

## C. EQUAL PROTECTION CHALLENGE OF THE CHANGE OF VENUE

■ Intervenors claim as their third and final error that the automatic change of ven-

---

7. One of the Intervenors, Henry Cornelius, was made a named class representative.

8. Neither Amoco nor the Class Plaintiffs challenge Judge McLaughlin's jurisdiction over this suit. In fact, neither party could challenge the appointment because they submitted to the juris-

diction of Judge McLaughlin when they submitted motions to him and acted in accordance with his orders. *Bivins v. State,* 485 N.E.2d 89 (Ind.1985)(failure to promptly object to judge's appointment waives any objection).

ue from Lake county to Newton county pursuant to Ind.Trial Rule 76 violated the Equal Protection Clause. Specifically, the Intervenors claim that the change of venue was the equivalent of a wholesale peremptory challenge of African–Americans because African–Americans make up only .1% of the Newton County population as opposed to 25% in Lake County. In their Appellant's Brief, the Intervenors originally challenged the application of T.R. 76.[9] However, in their Reply Brief, Intervenors claim to be making a facial challenge to T.R. 76, not a challenge of its application. "An issue may not be raised for the first time in a reply brief." *Matter of Adoption of H.M.G.*, 606 N.E.2d 874, 874, n. 1 (Ind.Ct.App.1993). We will, therefore, discuss only Intervenors' challenge to the application of the T.R. 76 automatic change of venue to Newton county.

This court dealt with the same equal protection challenge involving the same counties in *Osmulski v. Becze*, 638 N.E.2d 828 (Ind.Ct.App.1994)(Garrard, J.). To succeed in their challenge, the Intervenors must establish a prima facie case of discrimination. *Id.* at 834. "To establish a prima facie case of discrimination, the litigant is entitled to rely on the fact that the mere exercise of a peremptory challenge (or, under these facts, an automatic change of venue) may be circumstantial evidence of discriminatory intent. . . ." *Id.* Once a prima facie case of discrimination has been made the burden shifts to the defendant, Amoco, "to come forward with a race-neutral explanation for the exclusion." *Id.* The race-neutral explanation need not be enough to support a challenge for cause, but Amoco must do more than simply deny a discriminatory intent. *Id.* Amoco must present a race-neutral explanation related to the facts of this particular case. *Id.*

█ Because in *Osmulski* we found the change of venue to a venire with such a small percentage of African–Americans was prima facie evidence of discrimination, we now also find the Intervenors have established a prima facie case of discrimination. The burden then shifted to Amoco to present a race-neutral explanation for the change of venue in this case. Amoco argues that they requested a change of venue to escape the widespread negative publicity in the Whiting/Hammond area surrounding the alleged migration of oil from the refinery. Amoco points to numerous newspaper articles about the oil migration and to the statements of witnesses and attorneys in the case. Class Plaintiffs' attorney Ruman, speaking about one article in particular, stated that the entire Northwest Indiana Community read the article about the incident. Amoco argues, and we agree, that this publicity could well have prejudicially affected the trial. We hold that Amoco has successfully presented a race-neutral justification for the change of venue in the present case and has, therefore, carried its burden of rebutting Intervenors' prima facie case. Because the change of venue request was made for race-neutral reasons, Intervenors' equal protection rights were not violated by the change of venue from Lake county to Newton county.[10]

## II. AMOCO'S CLAIM

Amoco claims that the trial court erred when it granted Class Plaintiffs' motion to correct error and entered judgment on the evidence finding Amoco liable for intentional trespass. More specifically, Amoco claims that the trial court applied the incorrect intent standard for proving intentional trespass. In its order on the motion to correct error, the trial court stated that Amoco's intent to refine oil in Whiting was sufficient to fulfill the intent element of the intentional trespass claim. Amoco claims that the mere intent to refine oil is not sufficient to satisfy this requirement. We agree. Because we find the issue of intent to be dispositive, we need not discuss the sufficiency of the evidence of trespass.

---

9. "Given the unconstitutional *application* of former Trial Rule 76, this Court must modify the Final Judgment Order and Judgment on the Verdict of the court below and make it inapplicable to the Intervenors." Appellant's Brief, p. 47 (emphasis added).

10. We find it interesting to note that none of the Class representatives or named Intervenors were African–Americans and that from review of the record it appears that Intervenors/Class Plaintiffs attempted to emphasize this fact before the all white jury.

In its order granting judgment on the evidence, the trial court found that the simple intent to refine oil at Whiting was sufficient to support the finding of intentional trespass. Amoco claims that it must have intended that the oil migrate under the Class Plaintiffs' land, while Class Plaintiffs' argue, quite naturally, that the trial court was correct. Both parties rely on *Hawke v. Maus*, 141 Ind.App. 126, 226 N.E.2d 713 (1967) to support their contentions. *Hawke* involved an intentional trespass claim against the driver of a delivery truck which struck the plaintiff's tree. From the facts of the case, it was clear that the truck driver did not intend the trespass. The main issue before the court of appeals was whether the trespass was the result of a volitional act by the driver or whether the driver was forced into the tree by the third party. Quoting the 1 RESTATEMENT (SECOND) OF TORTS § 164 cmt. a, p. 296 (1965), the court stated, " '[t]he intention which is required to make the actor liable under the rule stated in this Section is an intention to enter upon the particular piece of land in question, irrespective of whether the actor knows or should know that he is not entitled to enter.' " *Id.* 226 N.E.2d at 715. The court went on to state that " '[a]lthough it is not necessary that the trespasser intend to commit a trespass or even that he know that his act will constitute a trespass, it is required for trespass that there be an intentional act and an intent to do the very act which results in the trespass.' " *Id.* at 716 (quoting 87 C.J.S. TRESPASS § 5, p. 960). Neither these statements nor subsequent case law do much to clarify what intent is necessary for intentional trespass.

▪ Though it is not binding authority, we find persuasive the definition of intent the Washington Supreme Court used in *Bradley v. American Smelting and Refining*, 104 Wash.2d 677, 709 P.2d 782 (1985). *Bradley* dealt with an intentional trespass claim against a smelting plant for hazardous airborne emissions that landed on the plaintiff's land. The defendant knew that airborne emissions from its plant were landing on the plaintiff's property and those around it, but could not prevent the emissions absent discontinuing operations at the plant. Much

like in *Hawke*, the court relied heavily on the RESTATEMENT (SECOND) OF TORTS in defining the requisite intent but focused on § 158 rather than § 164. Quoting from sec. 8(A) (1965), the court stated that " '[t]he word "intent" is used ... to denote that the actor desires to cause consequences of his act, or that he believes that the consequences are substantially certain to result from it.' " *Id.* 709 P.2d at 785. The court further stated that " '[i]ntent is not, however, limited to consequences which are desired. If the actor knows that the consequences are certain, or substantially certain, to result from his act, and still goes ahead, he is treated by the law as if he had in fact desired to produce the result.' " *Id.* (quoting 1 RESTATEMENT (SECOND) OF TORT § 8A cmt. b, p. 15 (1965)).

We believe that the definition of intent espoused in *Bradley* correctly describes the intent discussed by the court in *Hawke*. We hold that Amoco must have intentionally committed an act that it knew or was substantially certain would result in the migration of oil onto the Class Plaintiffs' property for it to fulfill the intent element of intentional trespass. Absent some evidence of knowledge of the certain or substantially certain migration, mere intent to refine the oil was not sufficient.

▪ Even though Class Plaintiffs requested a new trial, the trial court granted judgment on the evidence, so it is the judgment on the evidence standard of review to which we now turn. In considering a motion for judgment on the evidence after a jury verdict, the trial court must look only to the evidence and reasonable inferences therefrom favorable to the nonmoving party. *Huff v. Travelers Indem. Co.*, 266 Ind. 414, 363 N.E.2d 985, 990 (1977). "The trial court may enter judgment only *if there is no substantial evidence or reasonable inference to be adduced therefrom to support an essential element of the claim*, i.e., the evidence must point unerringly to a conclusion not reached by the jury." *Id.* (emphasis in original). A trial court may not grant judgment on the evidence if there is relevant evidence which supports the verdict because the final determination should be left to the finder of fact.

*Id.* When reviewing the trial court's grant of a motion for judgment on the evidence, we employ the same standard of review as the trial court. *Coffel v. Perry,* 452 N.E.2d 1066, 1068 (Ind.Ct.App.1983).

To uphold the trial court's judgment on the evidence in this case, the evidence must point unerringly to the conclusion that Amoco knew or was substantially certain that oil would migrate onto the Class Plaintiffs' property if Amoco operated its Whiting refinery. Though the testimony is conflicting, it does not point unerringly to this conclusion. Amoco presented evidence that it employed various devices to prevent any migration of oil off its property and that it believed that these devices were effective. Amoco also presented evidence that it met all federal safety requirements and all standards set by the Indiana Department of Environmental Management. Though Class Plaintiffs claim that this evidence should be discounted, it is not the province of this court to weigh the evidence. *Huff,* 363 N.E.2d at 990–91.[11] We hold that the evidence does not point unerringly to a conclusion opposite that of the jury verdict and, therefore, the trial court erred by granting judgment on the evidence on the intentional trespass claim.

Because Class Plaintiffs did not challenge the underlying jury verdict on the intentional trespass claim, we now remand this issue to the trial court and order the trial court to reinstate the jury verdict.[12] *See Tancos v. A.W., Inc.,* 502 N.E.2d 109 (Ind.Ct. App.1986) *reh'g denied, trans. denied* (court remanded with orders to reinstate jury verdict after erroneous grant of judgment on the evidence).

### III. CLASS PLAINTIFFS' CLAIMS

#### A. NUISANCE CLAIM

Class Plaintiffs claim that the trial court erred when it refused to enter judgment on the evidence on their nuisance claim. Amoco counters that the trial court correctly refused to enter judgment on the evidence because the evidence does not point unerringly to the conclusion that the operation of the Whiting refinery constituted a nuisance. In our determination of this issue we employ the same standard of review as we used in Section II, *supra.* The focus of our analysis is whether the evidence points unerringly to a conclusion opposite that reached by the jury. *Huff v. Travelers Indem. Co.,* 266 Ind. 414, 363 N.E.2d 985, 990 (1977).

"The essence of a private nuisance is the use of property to the detriment of the use and enjoyment of another's property." *Wernke v. Halas,* 600 N.E.2d 117, 120 (Ind.Ct.App.1992). To determine whether Amoco's actions constituted a nuisance, "the relevant inquiry is whether the thing complained of produces such a condition as in the judgment of reasonable persons is naturally productive of actual physical discomfort to persons of ordinary sensibility." *Lever Bros. v. Langdoc,* 655 N.E.2d 577, 583 (Ind.Ct.App. 1995). The determination of whether a nuisance has in fact occurred "is to be made by the trier of fact in light of all the surrounding facts and circumstances." *Wernke,* 600 N.E.2d at 120.

Amoco presented evidence at trial from several experts that the levels of benzene on the Class Plaintiffs' property were not high enough to cause any short or long-term health problems or physical discomfort. Testimony by a real estate expert showed that the Class Plaintiffs' property value had not been adversely affected. Further, Stanley Dostatni, who lives in the area but who was not a member of the class, testified that he had never experienced any problems with oil on his property. There was even testimony from class representative Robert O'Drobi-

---

11. It appears that the trial court may have mistakenly applied the standard for a motion for new trial which allows the trial court to sit as the thirteenth juror and weigh the evidence. *Huff,* 363 N.E.2d at 994.

12. The trial court, in its order granting judgment on the evidence, also stated that Class Plaintiffs had failed to demonstrate compensable damages and awarded nominal damages in the amount of one dollar to each of the named class representatives. Both Class Plaintiffs and Amoco challenge these damages. Because we reinstate the jury verdict of no liability, the issue of damages for the trespass claim is moot and we, therefore, will not discuss it.

nak that his tenant loved the house O'Drobinak rented and had moved back into the area despite the alleged underground oil. The expert testimony and testimony of Mr. Dostatni and O'Drobinak is relevant evidence that Amoco did not create a nuisance. Because there is conflicting relevant evidence that does not point unerringly to the conclusion opposite that reached by the jury verdict, the trial court was correct in denying Class Plaintiffs' request to enter judgment on the evidence on the nuisance claim.

### B. DISMISSAL OF ABSENT CLASS MEMBERS

Class Plaintiffs next claim that the trial court erred when it dismissed absent class members who failed to return a discovery questionnaire. Arguing that absent members of a class are not subject to discovery, Class Plaintiffs ask us to find this dismissal erroneous, reverse the jury verdicts, and order a new trial. Amoco argues that the questionnaire was a proper discovery tool and that absent class members are subject to discovery. Because we find any error that occurred to be harmless, we need not address these claims.[13]

 "An error is harmless if it does not affect the substantial rights of the parties." *Bonnes v. Feldner,* 642 N.E.2d 217, 219 (Ind.1994). Class Plaintiffs do not attempt to argue how the absent class members, who have made no effort to intervene at the appellate or trial level, were prejudiced by their dismissal. In fact, Class Plaintiffs admit in their Appellant's Brief that the absent members may have no interest at all in the present litigation. We also note that because we have reinstated the jury verdict of no liability, had the absent class members not been dismissed, they would be in the same position they are now, i.e., precluded from further litigating these claims. We, therefore, hold that any error that occurred was harmless and we decline to reverse the jury's verdict.

13. We are assuming error occurred only because we find the harmless error issue to be dispositive

### C. EXCLUSION OF EVIDENCE OF FEAR, FIRES AND EXPLOSIONS

Class Plaintiffs next argue that the trial court erred when it granted Amoco's motion in limine to prevent testimony about Class Plaintiffs' fear of fire and explosions, and testimony about fires and explosions that have occurred at the Whiting refinery. Arguing that this evidence was relevant and could have led the trial court to grant judgment on the evidence on the nuisance claim, Class Plaintiffs ask us to reverse the trial court order and remand for a new trial. Amoco counters that the proposed testimony was irrelevant because it dealt with occurrences unrelated to the underground migration of oil and was prejudicial. While we agree that reversal is not required, we base our decision on reasons different from those proffered by Amoco.

 "Where evidence is erroneously excluded, reversal is justified only if the error relates to a material matter or is of such character as to substantially affect the rights of the parties." *Manns v. State Dept. of Highways,* 541 N.E.2d 929, 936 (Ind.1989). For the purposes of this issue only, we will assume that the trial court erred in granting the motion in limine and excluding the evidence. The only harm that Class Plaintiffs claim was caused by the exclusion of this evidence was "that evidence *may* even have prevented the Court from finding a nuisance when it corrected the jury's verdict." Appellant Brief of Class Plaintiffs, p. 63 (emphasis added). As we discussed in section III. A., *supra,* Amoco presented enough conflicting evidence concerning the nuisance claim to preclude judgment on the evidence. The admission of this additional evidence of fear, fires, and explosions does not change the fact that this conflicting relevant evidence was sufficient to preclude judgment on the evidence. Class Plaintiffs also fail to explain how this additional testimony would have changed the jury's verdict. Because the exclusion of this evidence did not substantially affect the rights of the Class Plaintiffs, reversal is not justified. *Manns,* 541 N.E.2d at 936.

and do not offer any opinion as to the correctness of the dismissal of the absent members.

### D. INDEPENDENT MEDICAL EXAMS

In its final claim of error, Class Plaintiffs argue that the trial court erred by conditioning testimony about physical discomfort claims upon the witnesses' submission to IMEs and by excluding the testimony of those who did not submit to the examinations. Once again, Class Plaintiffs fail to claim any prejudice or harm, simply stating that the trial court's actions were erroneous. Because we find any error that occurred to be harmless, we need not discuss the merits of this claim.

 "An error is harmless if it does not affect the substantial rights of the parties." *Bonnes v. Feldner*, 642 N.E.2d 217, 219 (Ind. 1994). Because Class Plaintiffs make no claim of harm, we will discuss the effect the exclusion of evidence would have had on damages and on the trial court's decision not to grant judgment on the evidence.[14] We first note that any claim of prejudice in relation to damages is moot because we have reinstated the jury's verdict of no liability on all claims. Turning now to the claim that this evidence would have affected the trial court's decision not to grant judgment on the evidence on the nuisance claim, we hold that this claim must fail as well. As we discussed in Sections III. A. and C., *supra*, the existence of further evidence of a nuisance does not counteract the relevant conflicting evidence that no nuisance existed. This conflicting evidence was sufficient to preclude the trial court from granting judgment on the evidence on the nuisance claim.

Because the damages issue is moot and the trial court's decision on the nuisance claim would not have been changed by the excluded evidence, we hold that any error was harmless. We, therefore, decline to reverse the trial court's decision to exclude this testimony.

### CONCLUSION

As to the trial court's grant of judgment on the evidence on the trespass claim, we reverse and remand to the trial court to reinstate the jury verdict. In all other aspects we affirm the judgment of the trial court.

Reversed and remanded in part, and affirmed in part.

STATON and DARDEN, JJ., concur.

---

**14.** We limit our discussion to these two issues because we fail to see how the excluded evidence of alleged transitory physical discomfort caused by the underground oil is relevant to any of Class Plaintiffs' other claims.